## SCHNEIDER v. PATTON et al., Appellants.

### Division Two, June 9, 1903.

1. **Judgment: RESPONSIVE TO PLEADINGS.** Unless a judgment is responsive to the issues set up in the pleadings, it is erroneous.

2. ————: **DEPENDS ON ALLEGATION AND PROOF.** A party can not state one cause of action in his petition and recover upon another. The decree which is awarded him must be authorized both by the facts stated in the petition and by the proof.

3. ————: ————: **GENERAL PRAYER.** While under the prayer for general relief in an equitable action a party may have any relief to which he shows himself entitled, yet such relief must be founded on and be consistent with the allegations in the bill and not simply with such facts as may be proved at the trial.

4. ————: ————: **BILL TO SET ASIDE FRAUDULENT DEED: PERSONAL JUDGMENT.** Where the petition is an ordinary bill to set aside certain deeds to real estate made with a fraudulent purpose on

the part of the grantor to evade the payment of certain judgments against him and to subject the land to the lien of such judgments, a personal judgment can not be rendered against the grantee, who had knowledge of the grantor's fraudulent purpose, to compel him to turn over to the clerk of the court a note which the said grantee has received as part payment for the land in a sale thereof made by him to an innocent third party, or in the event that he fail to do that within a time fixed by the decree that a personal judgment be rendered against him for the amount of the note. Such a decree is not authorized by the petition, even though it asks for general relief. Nor is such decree authorized by an amendment to the petition during the trial asking "for such personal judgment against the defendant as may be proper and legal," for such additional prayer does not enlarge upon or broaden the allegations of the petition.

5. ———: ———: ———: ———: CASE STATED. The allegations of the petition which charged fraudulent conduct were that the defendant Patton held in his own name certain notes belonging to plaintiff's judgment debtor, which he used for the purpose of paying for real estate, and that he held such real estate under a secret arrangement for the benefit of said judgment debtor, and that for the purpose of assisting him he transferred said property to a third party, and that this third party was holding said real estate for the purpose of covering it up from the judgment debtor's creditors. This third party was made a defendant, also, and the purpose of the petition was to secure a decree adjudging this land to belong to the judgment debtor and to make it subject to the payment of the judgment. But it contained no allegations from which it could be inferred that a personal judgment could be asked against Patton. *Held*, the evidence showing that such third party was an innocent purchaser, a judgment could not be rendered against Patton for the cash received by him from such third party in payment for the land.

6. ———: ———: MONEY RECEIVED FOR SALE. In a suit to set aside certain deeds as having been made to defeat the grantor's creditors with the knowledge of his fraudulent purpose by the grantee, a personal judgment can not be rendered against the grantee for the money received by him from a sale of the land to an innocent third party, and by said grantee turned over to the said grantor (the judgment debtor) before any proceedings were taken against the said grantee by the grantor's creditors.

7. ———: ———: ———: ———: GARNISHMENT PROCEEDINGS. Nor can a personal judgment be rendered against such grantee for money received for the sale of the land in such case on the basis that a garnishment suit was pending against him by the same plaintiff

in regard to such money when he turned the same over to the judgment debtor and when the suit to set aside the deeds was brought, if nothing is said in the petition about the pending of such garnishment proceeding.

8. **Fraudulent Conveyance:** NECESSARY PARTY. The grantor in a fraudulent conveyance is not a necessary party defendant in a suit by his creditors to have said deed set aside as being in fraud of their rights.

9. **Final Judgment:** MOTION FOR NEW TRIAL. The fact that the court after rendering final judgment made some changes in it did not rob it of its integrity as a final decree. So that where the court rendered judgment against defendant requiring that he within five days indorse and turn over to the clerk a note for $2,000 to be held by him for the use of plaintiff, and that if he failed to do that that plaintiff should have and recover of defendant the full face value of the note, and for costs, and thereupon defendant filed his motion for a new trial, and a few days later the court overruled this motion and by the same order, since it appeared that defendant had not turned over the note, rendered judgment against him for the face value thereof, it is held, that the first decree was a final judgment, and it was not necessary for defendant to again file his motion for a new trial after the modification of the decree, since an execution could have been issued on the original judgment had no modification been made therein, and it was a determination of the substantial merits of the controversy.

Appeal from Buchanan Circuit Court.—*Hon. A. M. Woodson,* Judge.

REVERSED AND REMANDED.

*Stauber, Crandall & Strop* and *H. M. Ramey* for appellants.

(1) The decree in this case can not be sustained because it is not responsive to the issues made by the petition. Ross v. Ross, 81 Mo. 84; Reed v. Bott, 100 Mo. 62. (2) The petition is an ordinary bill to set aside an alleged fraudulent deed and to subject certain real estate to the lien of plaintiff's judgment. No allegations are made which justify a personal judgment. Dougherty v. Adkins, 81 Mo. 411; Dumphy v. Kleinschmidt, 78 U. S. 610; Story's Eq. Pl., sec. 40. (3) Al-

though the petition contained a prayer for general relief, yet the relief granted must in all cases conform to the special facts alleged. Duncan v. Fisher, 18 Mo. 404; McNair v. Biddle, 8 Mo. 257; Meade v. Knox, 12 Mo. 287; Williams v. Williams, 1 John. Ch. 111. (4) Even though the evidence sustained the decree, yet the decree is not based on the issues made by the pleadings. In this condition of the record the bill should have been dismissed. Miltonberg v. Morrison, 39 Mo. 71; Peckham v. Boffman, 11 Mich. 529; Irwin v. Childs, 28 Mo. 576. (5) Where the evidence sustained the decree but is not embraced in the issues made by the pleadings, the plaintiff should amend his bill or the bill should be dismissed. Newham v. Kenton, 79 Mo. 382. (6) Where fraud is charged either in fraud or equity the special fraudulent act complained of must be alleged. In this case the petition seeks to set aside a deed and subject certain real estate to the lien of plaintiff's judgment. No complaint is made of the conversion of the real estate into cash or the fraudulent appropriation of such money and conversion. Yet upon these facts alone the decree is based. Hoester v. Sammelman, 101 Mo. 824; Nichols v. Stevens, 123 Mo. 117; Wilson v. Polk County, 112 Mo. 138; Clough v. Holden, 115 Mo. 353; Smith v. Simms, 77 Mo. 269; Williams v. Railroad, 112 Mo. 496. (7) The bill having been founded upon the fraudulent title of Curtin, and the plaintiff having sued to set aside Curtin's deed, and this being the only fraud complained of, the finding of the court that Curtin had good title defeated the bill and it should have been dismissed for the reason that Curtin's title is the only issue raised by the pleadings. Muenks v. Bunch, 90 Mo. 500; Judy v. Gilbert, 79 Ind. 96. (8) The record in this case shows conclusively that plaintiff, before the commencement of this suit, had full knowledge of all the facts. The evidence also shows that plaintiff had a full, adequate and complete remedy at law by means of the writ of garnishment. For this reason the

judgment should be reversed. Humphreys v. Anchor Milling Co., 98 Mo. 542; Dunlop v. Mitchell, 80 Mo. App. 393; Straub v. Simpson, 74 Mo. App. 230; Alnutt v. Leeper, 48 Mo. 319; Thias v. Siener, 103 Mo. 323; Mullen v. Hewitt, 103 Mo. 651; Board of Public Works v. Columbia College, 17 Wall. 530. (9) The plaintiff having commenced garnishment proceedings, could not, during the pendency of those proceedings, ask the interposition of a court of equity. Having elected to pursue his remedy at law, his election was final until the termination of the legal proceeding. Hargardine v. Warden, 151 Mo. 578; Bangs Milling Co. v. Burnes, 152 Mo. 350; Stokes v. Barnes, 132 Mo. 214; Mapes v. Burnes, 72 Mo. App. 411; Nansen v. Jacob, 93 Mo. 332. (10) This case should be reversed because of a defect of indispensable parties defendant. The only principle upon which the bill could be sustained at all, if it can be sustained, is because it is in effect a bill of discovery, and if it is a bill of discovery, Thomas Maney, the alleged fraudulent grantor, is an indispensable party. Pomeroy's Remedies and Remedial Rights, sec. 347; Wait on Fraudulent Conveyances (2 Ed.), sec. 129. (11) The court erred in rendering judgment for the amount of the $2,000 note. Where a fraudulent grantee has a bona fide claim which is secured, and the fraud was in a subsequent transaction, he will be allowed to retain his priority to the amount of his debt and prior security. Martin v. Turnbaugh, 153 Mo. 172; Van Keuren v. Mc-Laughlin, 19 N. J. Eq. 187; Bank v. Harris, 6 La. Ann. 811; Ripley v. Severance, 23 Mass. 474; Smith v. Grimes, 43 Iowa 366; Bank v. Essex, 84 Ind. 144. (12) The court erred in charging appellant with the amount of cash received from the Curtin sale because appellant, having returned this cash to Maney, the alleged fraudulent grantor, before the filing of this bill, purged himself to any fraud as to said fund. Wait on Fraudulent Conveyances (2 Ed.), sec. 176; Swift v. Holdridge, 10 Ohio 231; Rayner v. Whicher, 88 Mass. 292;

Thomas v. Goodwin, 12 Mass. 140. (13) The findings of fact and the judgment of the court are not supported by the evidence. It is the duty of the appellate court to exercise a supervision over the findings of fact and to review the evidence *de novo*. Estes v. Fry, 94 Mo. 266; Clark v. Bank, 57 Mo. App. 282; Blount v. Spratt, 113 Mo. 48; Gould v. Smith, 48 Mo. 43; Moore v. Davis, 51 Mo. 233; Knapp v. Publishing Co., 127 Mo. 53. (14) There is no evidence of fraud on the part of appellant. If a transaction consists as well with honest and fair dealing as with a fraudulent purpose, it will be referred to the better motive. Dallon v. Renshaw, 26 Mo. 533; Rumbolds v. Parr, 51 Mo. 592; Henderson v. Henderson, 55 Mo. 534; Ames v. Gilmore, 59 Mo. 537; Robinson v. Dryden, 188 Mo. 534; Page v. Dixon, 59 Mo. 43.

*James W. Boyd* for respondent.

(1) This is a suit in equity to subject property or its proceeds, in the hands of a fraudulent grantee, to the payment of judgments; and the decree is fully sustained by the petition, the evidence, and the facts found by the court. (2) When appellant took a deed to himself to conceal the debtor's lands from respondent's liens and to defeat payment of judgments, the judgment liens attached to said lands. R. S. 1899, secs. 2713-2714; Slattery v. Jones, 96 Mo. 216; Eneberg v. Carter, 98 Mo. 647; Woodward v. Mastin, 106 Mo. 324. (3) A fraudulent grantee is construed to be a trustee for the creditors, and as such is responsible for all his acts in disposing of the property fraudulently held by him. If he parted with it, he must account for its value. A court of equity follows the proceeds of the property and affords a remedy, by turning the legal owner into a trustee for the benefit of creditors. Jacob v. Smith, 89 Mo. 673; Bump on Fraudulent Conveyances (4 Ed.), sec. 623; Coale v. Moline Plow Co., 25 N. E. 1016; Solinsky v. Bank, 85 Tenn. 368; Mason

Vol. 175 mo—44

v. Pieron, 69 Wis. 585; Chamberlain v. Jones, 114 Ind. 458; Decker v. Decker, 15 N. E. 307; Woodward v. Mastin, 106 Mo. 324. (4) A fraudulent grantee is liable in equity to a personal judgment for the proceeds of the property sold by him; and the petition fully and aptly states all the facts necessary to sustain such judgments. See citations under point 3. (5) The holding of the title to the debtor's land by the appellant constitutes a secret trust, and is fraudulent and void. R. S. 1899, secs. 3397-3398; Bank v. Powers, 134 Mo. 432; Martin v. Estes, 132 Mo. 402; Roberts v. Barnes, 127 Mo. 405; Pattison v. Letton, 56 Mo. App. 325; Higgins v. Railroad, 43 Mo. App. 561; State ex rel. v. Durant, 53 Mo. App. 493; Donovan v. Dunning, 69 Mo. 406; Bump on Fraud. Con., sec. 55; McDonald v. Hoover, 142 Mo. 484; Woodson v. Carson, 135 Mo. 521. (6) When appellant took title to debtor's property to hinder and delay his creditors, then if he had any claim against the debtor, he could not enforce it against the property or its proceeds; but in law he held the entire property in trust for the benefit of the creditors. State ex rel. v. Hope, 102 Mo. 410; Seger's Sons v. Thomas Bros., 107 Mo. 635; Nat. Tube Works Co. v. Mach. Co., 118 Mo. 365; Boland v. Ross, 120 Mo. 205; Bump on Fraud. Con., sec. 55; Woodson v. Carson, 135 Mo. 521; McDonald v. Hoover, 142 Mo. 484. (7) The facts found by the circuit court are fully sustained by the evidence, and this court will accord deference to this finding by that court. Sharklin v. McCracken, 151 Mo. 587; Hartly v. Hartly, 143 Mo. 216. (8) No motion for a new trial was made after the final decree was rendered. State ex rel. v. Cline, 140 Mo. 502; Black on Judgments, secs. 3-4; State v. Sutterfield, 54 Mo. 394; Railroad v. Railroad, 94 Mo. 542; Stickler v. Tracy, 66 Mo. 465.

BURGESS, J.—This is a suit by a judgment creditor of one Thomas Maney, the object of which is to subject certain lands and lots of land owned by said

Maney to the lien and payment of certain judgments held and owned by the plaintiff against him.

The petition is as follows:

"Plaintiff for his amended petition states that on or about the 3d day of October, 1893, the State of Missouri, at the relation and to the use of Francis T. Conrad, recovered judgment in the circuit court of Buchanan county, Missouri, against Thomas Maney and others, for the sum of $13,413.97, which said judgment was based upon the bond of James Walsh, as administrator of the estate of Thomas Conrad, deceased, which said bond was in the sum of sixty-five thousand dollars, but the amount of the recovery for the breach of said bond was in the sum herein above stated. That on or about said date, the State of Missouri, at the relation and to the use of Martha Clarke, recovered judgment in the said court against Thomas Maney and others on the same bond for the breach thereof, for the sum of $7,-613.51. And the State of Missouri, at the relation and to the use of Agnes Conrad, about said date, recovered in said court judgment against said Thomas Maney on said bond for damages on account of the breach of said bond, for the sum of $7,613.51. That on or about the 31st day of August, 1894, each and every one of said judgments were duly and legally, for value received, assigned and transferred by the relators therein and respective owners and holders thereof, to J. George Schneider, the plaintiff herein. That on or about the 25th day of September, 1896, the lien of said judgment on the said real estate of Thomas Maney was duly and legally revived by an order and judgment of this court, duly and legally made in each one of said cases upon writs of scire facias, duly and legally served in due time upon the defendants in said cases, respectively, and the lien of said judgment upon the real estate of said Thomas Maney has been continuously alive and in

full force and effect ever since the 3d day of October, 1893. That the plaintiff is now the owner and holder of the aforesaid judgments and the respective liens thereof, and all the rights and interest pertaining to said judgments and liens.

"That the aforesaid bond of said Walsh as administrator of the estate of Thomas Conrad, deceased, upon which the said judgments were rendered, was executed on the — day of —— 1885.

"That on or about the 11th day of March, 1889, the Brick & Terra Cotta Manufacturing Company, a corporation, executed to Thomas F. Ryan its certain deed of trust, whereby it conveyed to said Thomas F. Ryan as such trustee certain real estate situated in the county of Buchanan and State of Missouri, described as follows: Five acres of land described and surveyed as follows: Beginning at a point in the middle of Weston avenue on the south line of the northwest quarter of section number twenty-nine, in township fifty-seven, of range number thirty-five, as shown by the plat of Sulphur Springs; running thence northeasterly with said avenue fourteen hundred and eighty-two feet to a point; running thence west parallel with the south line of said quarter section to the east line of the St. Joseph and Iowa railroad's right of way; thence running south and east far enough to include five acres of land (exclusive of said avenue), which shall be bounded on the east by said avenue, and on the west by the said St. Joseph and Iowa railroad's right of way; also lots numbered fifty-one, fifty-two, fifty-three, fifty-four and fifty-five of Sulphur Springs, as is shown by the plat filed in the recorder's office of Buchanan county, Missouri, on the 22nd day of December, 1858, by F. W. Smith, the said lots and land containing nine and forty-hundredths acres, more or less; to secure the payment to Bernard Patton and Thomas Maney of the sum of $18,144.42, being five promissory notes, each for the sum of $3,-628.80. That each one of said promissory notes so se-

cured was executed and made payable to the joint order of Bernard Patton and Thomas Maney, and bore interest from the dates thereof at the rate of eight per cent per annum. That at the time said judgment was rendered, and ever since that time, said Thomas Maney was and has been largely indebted, was totally insolvent and an execution against him was and would be totally unavailing and useless, and during said time as hereinafter stated, he has attempted to fraudulently conceal his property so as to hinder, delay and defraud his creditors and avoid the payment of his debts. That on or about January 1, 1895, said Maney did, with the fraudulent purpose of cheating, hindering and delaying his creditors, and especially the plaintiff herein, assign and transfer to defendant Bernard Patton, all his rights, title and interest in and to the five promissory notes and deed of trust, and said defendant Patton took and received said Maney's right, title and interest in and to said notes and deed of trust, for the purpose of aiding and assisting said Thomas Maney to hinder, delay and cheat and defraud his creditors, and especially said plaintiff. That said Thomas Maney's interest in and to said notes amounted to and was one-half part thereof, all of which said defendant Patton obtained and received as aforesaid, without paying or agreeing to pay any consideration whatever therefor, and solely for the purposes aforesaid. That on or about February 2, 1895, the said real estate was sold by said trustees under and by virtue of said deed of trust, and at said sale the defendant Patton bid for and purchased it at and for the price and sum of $15,600, and received a deed from said trustee therefor. That said Patton bid for and purchased and obtained a deed from said trustee for said land, for the joint use and benefit of himself and said Thomas Maney, and with the fraudulent purpose on his part and on the part of said Thomas Maney, to conceal said property from the lien of plaintiff's judgments, and to hinder and delay, cheat and defraud the

plaintiff herein, and prevent him from collecting his
said debts from said Maney.  That said Maney's inter-
est in and to said land, was and is an undivided one-half
part thereof.  That said Bernard Patton paid no con-
sideration whatever for the said lands, and he obtained
a deed therefor from said trustee by giving to said
Brick & Terra Cotta Manufacturing Company, in ac-
cordance with the understanding and agreement be-
tween him and said Maney, credit upon said promis-
sory notes, which, as above stated, belonged to him, and
Thomas Maney jointly, in equal proportions.

"That on or about April 17, 1895, the said Bernard
Patton obtained and received from the said Brick &
Terra Cotta Manufacturing Company, a deed of convey-
ance purporting to convey to him another and different
tract of land from that hereinabove described, situated
in Buchanan county, Missouri, and described as fol-
lows:  All of block one, Sulphur Springs, as subdivided
by Martin D. Myers, by his plat entered of record in
the records of deeds of Buchanan county, January 24,
1889; also all the ground in said addition, being north
of Myers street in said addition, and south of the land
now or formerly owned by the Brick & Terra Cotta
Manufacturing Company, in the northwest quarter of
section twenty-nine, in township fifty-seven, of range
thirty-five being the same property conveyed by Milton
E. Myers to the Brick & Terra Cotta Manufacturing
Company, by deed dated October 25, 1889, and now of
record in the land records of Buchanan county, Mis-
souri.  That he, the said Bernard Patton, paid no con-
sideration whatever for said lands, except to give the
said Brick & Terra Cotta Manufacturing Company, a
credit upon said notes herein above described, jointly
owned by him and said Thomas Maney.  This said land
was by an understanding by and between Bernard
Patton and Thomas Maney, purchased by said Bernard
Patton for the joint use and benefit of himself and
Thomas Maney, and with the joint means as herein-

above stated, of himself and Thomas Maney, and for the use and benefit of himself and Maney, and that he purchased said land and took a deed therefor to himself then, with the fraudulent purpose on his part, and on the part of said Thomas Maney, to conceal said property and real estate from the lien of plaintiff's judgments, and to hinder and delay, cheat and defraud the plaintiff herein, and prevent him from collecting his said judgments, or any part thereof, from said Maney. That all the said lands hereinabove described, including the lands last hereinabove described, the said Bernard Patton purchased with the joint means of himself and said Thomas Maney, each one of them paying half of the purchase price thereof, and the said deeds purporting to convey said lands to Bernard Patton were taken and received by said Bernard Patton with the fraudulent purpose and intention on his part and on the part of said Maney of hindering, delaying, cheating, and defrauding said Maney's creditors, and especially this plaintiff, and for the purpose of hindering and delaying this plaintiff in the collection of his said judgments, or any part thereof.

"That the defendant, Patton, in order to further assist said Maney in his object and purpose aforesaid, on or about the 29th day of July, 1896, executed a deed purporting to convey to defendant, Dennis Curtin, an undivided one-half part of the said lands, for the pretended consideration as expressed in said deed of the sum of $4,500. Said deed to Curtin was, however, made and executed without any consideration therefor, except the sum of twenty-five hundred dollars, which sum was then paid by said Curtin to Bernard Patton, who took and received said sum with the fraudulent intent and purposes on his part, and on the part of said Maney of concealing it from Maney's said creditors, and to cheat, hinder, delay and defraud his creditors, and especially this plaintiff, and was obtained and secured by said Dennis Curtin with the full knowledge on his part

of the aforesaid fraudulent plans and scheme on the part of said Maney and Patton, with the knowledge of the facts hereinbefore stated. That the said Bernard Patton and Dennis Curtin hold an undivided one-half of said lands in trust for the use and benefit of the said Thomas Maney, and in order to conceal it from his creditors and to prevent the lien of plaintiff from attachment thereto, and securing it to the payment of said judgment debts. That on or about the time when said Patton executed said paper purporting to convey to defendant Curtin said undivided one-half of said land, the defendant, Curtin, executed to said Patton a paper purporting to be a promissory note for the sum of twenty hundred dollars, which he claimed to be for deferred payment for said land, and then and there executed to said Bernard Patton a paper purporting to be a mortgage or deed of trust upon said land, for the pretended purpose, as in said paper stated, of securing said Patton the payment of said promissory note, which note has never been paid.

"Wherefore, plaintiff prays the court for an order judgment and decree:

"1. That the conveyance of said half of said lands by Bernard Patton to said Dennis Curtin, and the alleged mortgage or deed of trust, executed by said Dennis Curtin to Bernard Patton, be set aside.

"2. That the defendants be declared to hold said half of said land in trust for the payment of the said judgment of the plaintiff.

"3. That the said half of said land belonging to Maney be subjected to the lien of the plaintiff's said judgments, and sold for the purpose of applying the proceeds thereof to the payment of the plaintiff's said judgments.

"4. For such personal judgments against defendants as may be proper and legal.

"5. For all proper relief."

To this petition the defendants Patton and Curtin

filed answer, which, omitting caption, and names of attorneys, is as follows:

"Come now defendants in the above entitled cause and for answer to plaintiff's petition deny each and every allegation therein contained, and further answering defendants say that the true judgments mentioned in the petition have been paid, and that all the title the plaintiff may have had at any time by virtue of the assignments therein mentioned was in trust for defendants in said judgments, Lutz and Fuelling, and not otherwise."

Respondent filed reply to said answer, which, omitting matters of form, is as follows:

"Now comes plaintiff and for reply to defendant's amended answer herein, denies each and every allegation of new matter therein contained.

"Plaintiff further alleges that said Lutz and Fuelling were and are sureties in said judgments, and that defendants in said judgments, to-wit, Thomas Maney, Benjamin Ulman, Philip Rogers, and John Francis Smith, were and are co-sureties of said Lutz and Fuelling in said judgments; and all the defendants in said judgments were and are sureties thereon of one James Walsh, who was and is the principal in said judgments. That the judgments of the revival of said judgments mentioned in the petition, constitute an adjudication that nothing was paid on said judgments prior to the rendition of the said judgments of revivor. And the question of any such prior payments is and has been adjudicated against the defendants herein, and to the effect that no payments were ever made on such judgments prior to their revival, except the payments of costs as stated in said judgments of revivor."

The facts are stated by defendants to be substantially as follows:

"In 1889 and prior to that date, one Thomas Maney and defendant Bernard Patton, had been associated together in the brick business and were the owners of the

greater portion of the land described in plaintiff's petition, each owning an undivided one-half interest in said land. In January of that year they sold and conveyed said land to the Brick & Terra Cotta Manufacturing Company, a corporation, and on the 11th day of March said company executed and delivered to said Maney and Patton its five promissory notes, each for $3,628.88, aggregating in all $18,114.40, being for the purchase price of said lands and the appliances, tools, implements, etc., which were on said premises and used in the manufacture of brick. Said notes bore interest from date at eight per cent, and were due in one, two, three, four and five years after date, and were secured by deed of trust executed to Thomas F. Ryan, on the land conveyed to said company. The deed of trust was in usual form, with powers of sale in the trustee. At the time of the sale of this land to said company, there was included in the sale a large amount of personal property, consisting of tools, wheelbarrows and other appliances for the manufacture of brick, which belonged to Patton and in which Thomas Maney had no interest, of the value of $2,000 and which was sold to said company at that price, which price for said personal property was included in said five notes from said company to said Patton and Maney.

"In January, 1893, and before the rendition of the Conrad-Clark judgments hereinafter mentioned, Patton became liable for the payment of $2,000 for Thomas Maney, on account of notes, to John Lemon, curator of Milton and John Tootle, minors, and the said five notes given by said Brick & Terra Cotta Company to Patton and Maney, were indorsed by Thomas Maney and given to Patton to secure him on account of said $2,000 liability. Patton retained and held said notes and Maney's interest therein as security for said $2,000, which he was afterwards and before the commencement of this suit compelled to pay.

"About the 2d day of February, 1895, the Brick &

Terra Cotta Company, having defaulted in the payment of said notes and interest, Thomas F. Ryan, the trustee, advertised the land under the deed of trust and sold it, and at said sale Patton being the highest and best bidder, purchased said land at and for the price of $15,-600 and received a deed therefor. The said trustee's sale and the deed were regular and in due form. The amount for which Patton purchased the land at said sale was credited on said notes, paying off two of said notes and the larger part of the third note. Under the arrangement between Patton and Maney at the time of the trustee's sale, the title was taken in the name of Patton and he was to hold the land subject to the same conditions that he had theretofore held the said five promissory notes. Patton afterwards purchased of the Brick & Terra Cotta Manufacturing Company, a strip of land adjoining the land purchased by him at said trustee's sale, and paid for it by delivering to said company its unpaid notes aforesaid, this last purchase being made under the same arrangement that was made with reference to the land that was purchased at the trustee's sale. Said company, upon the surrender to it of its said unpaid notes, delivered to said Patton a deed conveying to him said land, and this last piece or parcel of land, together with the land mentioned in said deed of trust by said company, covers all the land described in the petition.

"Afterwards, on the 29th day of July, 1896, before the commencement of this suit, Patton sold and conveyed to Dennis Curtin an undivided one-half interest in all this land in consideration of $4,500. Curtin paid cash $2,500, and gave his promissory note for $2,000, bearing interest at —— per cent, and due —— after date. At the time of the sale of this land to Curtin by Patton, the said Thomas Maney and Patton had no settlement. At the time of the sale of this land to Curtin by Patton, and for many years prior thereto, one Daniel T. Lysaght had transacted Maney's business

and was also a friend of Patton. At the time of the sale to Curtin of the one-half interest in said real estate, the $2,000 note which was given by Curtin to Patton, as a part of the purchase price for said real estate, was held by Patton for the purpose of reimbursing himself on account of the money advanced by him in behalf of Maney on the Lemon-Tootle note above referred to. The balance of the purchase price, which amounted to $2,500, was disposed of as follows: The expense of the trustee's sale was paid, leaving a net balance of about $2,300. This money, long prior to the institution of this suit and shortly after the sale to Curtin, was turned over by Patton to Daniel T. Lysaght, for the purpose of being held by said Lysaght until such time as Maney and Patton could arrive at a settlement of all unsettled matters then existing between them, to all of which Maney at the time agreed, but Lysaght prior to the institution of this suit, and prior to any settlement of these unsettled matters between Patton and Maney, turned said money over to Maney. At the time of the sale of a half interest in the aforesaid real estate by Patton to Curtin, it was understood between Maney and Patton and Curtin, that the sale of said half interest to said Curtin embraced all right or interest which said Maney had in said real estate, and the court in its finding of fact, found that this sale to Curtin was a sale of all of said Maney's interest as aforesaid. The evidence tended to show that the sale by Patton to Curtin was for full value and fair, and that Curtin made the purchase in good faith, and the court by its finding and judgment so declared.

"After the sale of the land by appellant and Maney to the Brick & Terra Cotta Manufacturing Company, and after the transfer by Maney of his interest in the five notes of said company to Patton, to-wit, on the 3d day of October, 1893, the three judgments set out in the record in favor of the State of Missouri at the relation of Francis Conrad, and State of Missouri at the rela-

tion of Martha Clark, and State of Missouri at the relation of Agnes E. Conrad, were rendered. These judgments were rendered on the bond of James Walsh, against him and the other defendants therein named as sureties, but if Maney was indebted to any one except Patton at the time of the sale of this land to the Brick & Terra Cotta Company, or at the time of the transfer of Maney's interest in the said five notes, the evidence entirely fails to show it. The Conrad-Clark judgments obtained against Walsh et al., above referred to, were prior to September 25, 1896, transferred to respondent Schneider, and upon the 25th day of September, 1896, and were revived by judgments of the Buchanan circuit court. These judgments of revival were rendered after Patton had conveyed this land to defendant Curtin and after the $2,300 received from Curtin had been turned over to Maney aforesaid.

"After the revival of these judgments plaintiff on the —— day of December, 1896, sued out executions on them, and Patton was duly and regularly summoned as garnishee in said cause. In said Buchanan circuit court interrogatories were in due time filed and Patton filed under oath his answer to said interrogatories, to which said answer plaintiff filed denial. Said garnishment proceeding was still pending in said Buchanan Circuit Court and undetermined at the time of the trial of the case. In the answer filed to the interrogatories propounded in the above garnishment proceeding, a full and complete disclosure was made of all the facts as above stated with reference to Patton's acquisition of said real estate, how he held it, the sale of Maney's interest in the aforesaid real estate, Curtin's purchase thereof, and the disposition of the proceeds of said sale, and thereafter this suit was filed.

"The petition is an ordinary bill in equity. It alleges that the land described in the petition was sold to the Brick & Terra Cotta Manufacturing Company, and that the notes taken for the purchase price were as-

signed to Patton to defraud Maney's creditors; that Maney owned an undivided one-half interest in said notes, and that Patton purchased a part of the land at trustee's sale and also purchased the other land from the said Brick & Terra Cotta Manufacturing Company for the use of himself and Maney, and paid for the same with said notes; that he took a deed for said land to himself to cheat and defraud Maney's creditors, and that in furtherance of said scheme he sold an undivided one-half of said land to Curtin; that Curtin bought for the purpose of aiding said Maney and Patton to cheat and defraud Maney's creditors; that Curtin paid $2,500 and executed a paper purporting to be a note for $2,-000, and another paper purporting to be a deed of trust to secure said pretended note; that said pretended note and deed of trust were without consideration and in fraud of Maney's creditors, and also charged that Curtin was holding said half interest in said real estate for the use and benefit of Maney, and prayed that the conveyance of said half of said land by Patton to said Curtin, and the alleged mortgage or deed of trust executed by said Curtin to Patton, be set aside; that the defendants be declared to hold said half of said land in trust for the payment of the said judgment of the plaintiff; that the said half of said land belonging to Maney be subjected to the lien of plaintiff's said judgment and be sold for the purpose of applying the proceeds thereof to the payment of plaintiff's said judgments. The petition also contained the usual general prayer for equitable relief, and upon the trial of the cause and after the introduction of evidence, the plaintiff amended his petition by making the following additional prayer, to-wit: 'For such personal judgments against the defendant as may be proper and legal.'

"The court made an elaborate finding of facts as follows:

" 'The court finds as a matter of fact that on or about the 11th day of March, 1889, and prior thereto,

the defendants, Bernard Patton and Thomas Maney, held and owned as tenants in common, in equal shares, each owning an undivided half, the following described real estate, situated in the county of Buchanan, State of Missouri, to-wit: Five acres of land described and surveyed as follows: Beginning at a point in the middle of Weston avenue, on the south line of the northwest quarter of section twenty-nine, in township fifty-seven, of range thirty-five, as shown by the plat of Sulphur Springs; running thence northeasterly with said avenue one thousand four hundred and eighty-two feet to a point; thence west parallel with the south line of said quarter section to the east line of the St. Joseph & Iowa Railroad Company's right of way; thence south and east far enough to include five acres of land exclusive of said avenue, which shall be and is bounded on the east by said avenue; and on the west by said St. Joseph & Iowa Railroad Company's right of way; also lots numbered fifty-one, fifty-two, fifty-three, fifty-four and fifty-five of Sulphur Springs, as shown by the plat filed in the recorder's office of the county of Buchanan, State of Missouri, on or about the twenty-second day of December, 1858, by F. W. Smith. That on March 11, 1889, while said Bernard Patton and Thomas Maney were still the owners and holders of said real estate, they, the said Bernard Patton and Thomas Maney, sold and conveyed the said lands to the Brick & Terra Cotta Manufacturing Company, a corporation duly incorporated under and by virtue of the laws of the State of Missouri, for the sum of eight thousand, one hundred and forty-four dollars and forty-two cents, and to secure the payment to them of said sum they obtained, received and took from the said Brick & Terra Cotta Manufacturing Company, at that time, five promissory notes, each for the sum of three thousand, six hundred and twenty-eight dollars and eighty cents, made payable to Bernard Patton and Thomas Maney and to their order, and to secure the payment of said five promissory notes, said

Bernard Patton and Thomas Maney then and there obtained, accepted and received a deed of trust to said lands, executed by the said Brick & Terra Cotta Manufacturing Company, whereby said lands were conveyed to Thomas F. Ryan, as trustee, for the purpose of securing the payment of said five promissory notes. That each one of said notes is dated St. Joseph, Missouri, March 11, 1889, and were by their terms, due and payable in one, two, three, four, and five years respectively from their date, at the rate of eight per cent per annum. That when said notes were executed they were left by Thomas Maney in Bernard Patton's possession for safe-keeping without any indorsement of them by Thomas Maney. That thereafter about the year 1891, the said Thomas Maney indorsed said notes and left them in the possession of Bernard Patton but there was no consideration for the indorsement of them by Thomas Maney, except as hereinafter stated.

" 'That on the third day of October, 1893, the State of Missouri, at the relation and to the use of Francis T. Conrad, recovered judgment in the circuit court of Buchanan county, Missouri, against Thomas Maney and others for the sum of thirteen thousand, four hundred and thirteen dollars and ninety-seven cents. That at said date the State of Missouri, at the relation and to the use of Martha Clark, recovered judgment in the said court against said Thomas Maney and others for the sum of seven thousand six hundred and thirteen dollars and fifty-one cents. That at said date the State of Missouri, at the relation and to the use of Agnes E. Conrad, recovered judgment in said court against Thomas Maney and others for the sum of seven thousand six hundred and thirteen dollars and fifty-one cents. That each one of said three judgments was recovered on account of the breach of the bond of James Walsh as administrator of the estate of Thomas Conrad, deceased, which said bond was signed by Thomas Maney and others, and was for the

sum of sixty-five thousand dollars, and was executed on the 15th day of August, 1885. That after the rendition of said judgment and before the revivor thereof, on or about November 13, 1893, the said Francis T. Conrad, for value received, assigned and transferred the said judgment rendered in his favor, to George T. Hoagland. That on or about August 31, 1894, the said George T. Hoagland, for value received, assigned and transferred the judgment last aforesaid to J. G. Schneider, plaintiff herein. That on or about November 13, 1893, the said Martha A. Clark, for value received, assigned and transferred the said judgment rendered in her favor to George T. Hoagland. That on or about August 31, 1894, the said George T. Hoagland, for value received, assigned and transferred the last mentioned judgment to J. G. Schneider, plaintiff herein. That on or about November 13, 1893, the said Agnes Conrad, for value received, assigned and transferred the judgment aforesaid rendered in her favor to Geo. T. Hoagland. That on or about August 31, 1894, the said George T. Hoagland, for value received, assigned and transferred the last mentioned judgment to J. G. Schneider, plaintiff herein. That on the 25th day of September, 1896, the lien of said three judgments on the real estate of Thomas Maney and others was duly and legally revived in favor of J. G. Schneider, plaintiff herein, who was at said time the owner of all three of said judgments, by order and judgment of said court duly and legally made in each one of said three cases upon writs of scire facias, duly and legally served upon each one of the defendants in said cases respectively; and the lien of said judgments upon the real estate of Thomas Maney has been continuously in full force and effect ever since the third day of October, 1893. That plaintiff herein, J. G. Schneider, was, when said judgment liens were revived, the owner and holder of the judgments aforesaid and the revived liens thereof,

Vol 175 mo—45

and he is still the owner and holder of said judgments, and all the liens and rights which accrue under said judgments to the owner and holder thereof. That ever since the third day of October, 1893, when the said three judgments were rendered against Thomas Maney and others, said Thomas Maney has been insolvent except as to property, concealed, if any, from his creditors and the plaintiff in said judgments, and the executions issued thereon have never been able, since said judgments were rendered, to enforce payment thereof, or of any one of said judgments against Thomas Maney, nor have the owners and holders of said judgments, or either of them ever been able to compel said Thomas Maney to pay any sum whatever of said judgments, or any one of them, and the said Thomas Maney has never paid any sum on said judgments or any one of them.

" 'That on January 28, 1903, the Irish-American Building Association, with James Horigan, Thomas Maney, Bernard Patton and Michael Sheridan as makers with it, executed its promissory note for the sum of eight thousand dollars to John S. Lemon, curator of the estate of Milton Tootle, Jr., and John Tootle, minors, due and payable one year from the date thereof. That the payment of said note was at the time it was given secured by deed of trust on the building known as Columbia Hall; which said deed of trust was executed by the Irish-American Building Association. That the said mortgage on the Columbia Hall to secure the payment of said Lemon-Tootle note of eight thousand dollars was a second mortgage, and was subject to a mortgage for twenty-five thousand dollars given before that date; that said mortgage for twenty-five thousand dollars is the first mortgage on the said Columbia Hall and still remains unpaid and bears interest at the rate of eight per cent per annum. That when said note for eight thousand dollars was executed the said James

Horigan, Thomas Maney, Bernard Patton and Michael Sheridan were stockholders, owing to the capital stock of the Irish-American Building Association. That when payment of said eight-thousand dollar note was demanded the —— day of —— 1895, the said Thomas Maney failed to pay any part thereof, and on account of his failure to pay any part of said note the said Bernard Patton had to pay, on account of said Thomas Maney's liability on said note, the sum of two thousand dollars, about January 30, 1893. That on account of the failure to pay said note when it was due, the said property known as the Columbia Hall, was sold under said mortgage on January 16, 1895, and Bernard Patton became the purchaser thereof for himself, James Horigan and Michael Sheridan; and on account of his payment on said eight-thousand-dollar note of the sum of two thousand dollars for Thomas Maney, the said Bernard Patton, by agreement with Maney, took Maney's stock in the said association as collateral security to secure to him from Thomas Maney the repayment of said sum of two thousand dollars. That the stock in said Irish-American Building Association then owned by Thomas Maney amounted to one-fifth of the entire stock in said association, and when, after the purchase of said property by said Bernard Patton, under said deed of trust, the said association was reorganized, said Patton conveyed said Columbia Hall to the new association, and the said Thomas Maney became and was entitled to one-fifth of the stock in the new association, called the Irish-American Investment Company, and Bernard Patton became and was the holder of said Thomas Maney's stock therein as collateral security to secure to said Bernard Patton the payment of said sum of two thousand dollars paid by him for said Thomas Maney on said eight-thousand-dollar note. That the capital stock of said association was of the value of —— thousand dollars.

" 'That when Thomas Maney indorsed the five

promissory notes hereinabove mentioned of the sum of three thousand six hundred and twenty-eight dollars and eighty cents each, and left them in the possession of Bernard Patton, said Thomas Maney, notwithstanding said indorsement, continued to own one-half interest in and to said notes, except the claim of Bernard Patton in and to said notes as collateral security to secure to said Bernard Patton the said sum of two thousand dollars afterwards paid by him for Thomas Maney on the Lemon-Tootle note aforesaid. That for the indorsement of said notes by Thomas Maney, Bernard Patton paid no consideration whatever, other than to receive them as collateral to secure to him the payment of said sum of two thousand dollars. That said five notes were indorsed by said Maney in blank and delivered, and left with the defendant Bernard Patton, with the fraudulent purpose on the part of Maney and Patton of cheating, hindering and defrauding Thomas Maney's creditors, and especially the plaintiff in these judgments, as to the excess in the amount of said notes over and above the sum of two thousand dollars to become due from Maney to Patton on account of said Lemon-Tootle note, and prevent the plaintiff in these judgments in collecting them, or any part of them, from him, the said Maney; and the defendant, Bernard Patton, took and received said Maney's right, title and interest in and to said notes and deed of trust for the purpose of aiding and assisting said Thomas Maney to hinder, delay and defraud his creditors, and especially, this plaintiff, and the plaintiff in said judgments, as to all of Maney's right, title and interest in and to said five promissory notes except the said sum of two thousand dollars paid by Patton on the said Lemon-Tootle note.

" 'That on or about February 2, 1895, the said land and real estate described in the petition was sold by Thomas F. Ryan as trustee under and by virtue of the said deed of trust, and at said sale the defendant, Bernard Patton, purchased said lands and real estate

at and for the price of fifteen thousand six hundred
dollars, and received a deed of conveyance therefor
from the said trustee.   That said Bernard Patton bid
for, purchased and obtained a deed from said trustee
to convey to him said land with an agreement and
understanding by and between him and Thomas Maney
that he, the defendant, Bernard Patton, should, at said
sale, purchase said land and hold it for the joint use of
himself and Thomas Maney, in equal proportions, ex-
cept that by said agreement Thomas Maney's interest
should be subject to the payment to Bernard Patton of
said sum of two thousand dollars paid on account of
the Tootle-Lemon note, and with the fraudulent pur-
pose on the part of said Bernard Patton and on the
part of said Thomas Maney's right, title and interest
in and to said property in excess of the sum of two
thousand dollars, as hereinabove stated, from the lien
of plaintiff's judgments, and to hinder, delay, cheat
and defraud Maney's creditors, and especially the
plaintiff herein, and to prevent him, the plaintiff, from
collecting his said judgments, or any part thereof, from
Thomas Maney.   That the said Bernard Patton did at
said trustee's sale, purchase said lands described in
the petition and receive a deed thereto from said trustee
for himself and Thomas Maney, and the said Patton
admits in this case that he purchased said lands for
himself and Maney, and that each one was, by said pur-
chase, to obtain an undivided half interest therein, and
Maney's half interest therein was to be and was by said
agreement between them, subject to the said claim of
two thousand dollars hereinabove mentioned.   That
said Bernard Patton paid said sum of fifteen thousand
and six hundred dollars bid by him for said land at
said sale by the cancellation of two of the aforesaid
promissory notes, and by giving a credit upon a third
one of said notes being for the sum of four thous-
and, nine hundred and ninety-nine dollars and twenty-
nine cents, which said note at said time belonged to

Thomas Maney and Bernard Patton, each of them owning a half interest therein, except that Maney's half interest therein was subject to the payment of said sum of two thousand dollars, and the only consideration which said Bernard Patton paid for said lands when purchased by him at said trustee's sale was the cancellation of said two notes, and giving a credit of four thousand, nine hundred and ninety-nine dollars and twenty-nine cents upon the third one of said notes. That when said Bernard Patton received said trustee's deed for said land he and the said Maney then and there and thereby became the owners thereof, and Maney's interest in and to said land by virtue of said deed of trust and the sale thereunder, and the conveyance to said Bernard Patton, and the payment of the purchase price in the manner aforesaid, became and was, and still is, an undivided half part thereof, subject only to the payment of said sum of two thousand dollars on account of said Tootle-Lemon note. That the other two of said five promissory notes were after said purchase of said lands at said trustee's sale, still held by Bernard Patton for himself and said Thomas Maney, each owning a half interest therein, and Thomas Maney's interest thereof was, by said agreement between said Patton and Thomas Maney, to be subject to the payment of the said sum of two thousand dollars by said Thomas Maney on account of the amount as hereinbefore stated, being paid on the Tootle-Lemon note.

" 'That with these two said promissory notes the said Bernard Patton purchased another tract of land on or about the 17th day of April, 1895, of the value of two thousand dollars, which said tract of lands is described as follows: All of block one, Sulphur Springs, as subdivided by Martin D. Myers, by his plat entered of record in the recorder of deeds' office in said Buchanan county, on July or January 24, 1889; also all land or ground in said addition being north of Myers street in said addition, and south of the land now owned,.

or formerly, by the said Brick & Terra Cotta Manu-
facturing Company, in the northwest quarter of section
twenty-nine, in township fifty-seven, of range thirty-
five, being the same property conveyed by Milton D.
Myers to the Brick & Terra Cotta Manufacturing Com-
pany by deed, dated October 25, 1889, and now on
record in the land records of Buchanan county, Mis-
souri, which said tract of land is situate in said county.
That said last-mentioned tract of land was, at said time,
purchased by said Bernard Patton for the joint use and
benefit of himself and Thomas Maney, and the purchase
price thereof was paid by Bernard Patton with the
money and means belonging to himself and Thomas
Maney jointly, and by said purchase of said land on
the part of said Bernard Patton, the said Thomas
Maney became the owner of one-half interest in and
to said tract of land, subject alone to the aforesaid claim
against him of the sum of two thousand dollars paid
by said Bernard Patton on account of said Lemon-
Tootle note; and the said Maney paid one half of the
purchase price of said tract of land, subject to said
claim of two thousand dollars. That said Bernard
Patton took the deed to said land to himself alone for
the purpose on his part and upon the part of the said
Maney of fraudulently concealing the excess of said
Maney's interest over and above the said sum of two
thousand dollars, in and to said tract of land from said
Maney's creditors, and with the fraudulent purpose
to hinder, delay, cheat and defraud said Maney's credi-
tors, and especially the plaintiff in this case. That the
undivided half of said land last above described, was
included in and conveyed by the deed from Bernard
Patton to Dennis Curtin, July 29, 1896, and it was also
conveyed by and included in the said deed of trust
executed by Dennis Curtin to secure to Patton payment
of said note for two thousand dollars, and this tract
of land was included in said deed, and deed of trust, in
the same manner and with the same intent and purpose

that the tracts of land purchased by said Patton at the sale of Ryan as trustee, were included therein.    That when said Patton received said promissory notes from said Maney and when they were indorsed to him by Maney to secure the payment of the said sum of two thousand dollars, on account of the Lemon-Tootle note, he, said Patton, did not take them with the intent to cheat or defraud Maney's creditors, but in good faith to secure him against loss on Maney's account, on said Lemon-Tootle note, and which was done long prior to any of the fraudulent acts done by Patton and Maney as hereinbefore stated.    It was a separate and distinct transaction.

" 'That on or about the 29th day of July, 1896, the defendant, Bernard Patton, executed a deed conveying to Dennis Curtin an undivided half part of said lands, which he had purchased February 2, 1895, at the sale of Thomas F. Ryan, trustee, for the alleged consideration as expressed in said deed of the sum of forty-five hundred dollars, which said one-half was that belonging to Thomas Maney.    That the said deed to Dennis Curtin was made and executed by Bernard Patton with the object, intent and purpose of concealing Thomas Maney's interest in and to said land in excess of the said sum of two thousand dollars, and for the purpose of assisting Maney to cheat, hinder, delay and defraud his creditors and especially this plaintiff.    That said Dennis Curtin, at the time he accepted said deed of conveyance, purchased said undivided half of said land in good faith and for full value, without any knowledge of any fraudulent intent on the part of said Bernard Patton or Thomas Maney.    That when said Dennis Curtin purchased said half interest in and to said land on or about the 29th day of July, 1896, he executed to Bernard Patton his promissory note for two thousand dollars as the unpaid part of the purchase price of said interest in said land conveyed to him by Patton, and he executed at said time a deed of trust on said land to

said Patton to secure the payment of his said promissory note. That the said promissory note has not been paid by said Dennis Curtin, and it is now held by Bernard Patton. That when said Dennis Curtin purchased said part of said real estate the cash payment made by him to Bernard Patton amounted to the sum of twenty-five hundred dollars. That the said Bernard Patton never held Maney's interest in and to said five promissory notes as collateral security to secure the payment to him by Maney of any sum whatever except the said sum of two thousand dollars paid by Patton for Maney on the Lemon-Tootle note, and there never was any agreement made between Maney and Patton that Patton should hold said five promissory notes, or any of them, as collateral, for any other sum except said sum of two thousand dollars, and the said Thomas Maney was not, at any time herein mentioned, indebted to said Bernard Patton in any sum except in said sum of two thousand dollars paid by Patton on the Tootle-Lemon note.

" 'That in July, 1896, when said Patton sold said half interest in said part of said lands herein first described to Dennis Curtin, Thomas Maney was not indebted to said Bernard Patton over and above the sum of two thousand dollars, the amount paid by Patton on the said Tootle-Lemon note. That as a further security to said Bernard Patton for the payment to him of said sum of two thousand dollars paid by him on the Tootle-Lemon note, he holds Maney's right, title and interest in and to one-fifth of the capital stock of said Irish-American-Association, which is of little or no value.

" 'The court further finds that within a few days after the defendant, Bernard Patton, executed said deed to Dennis Curtin, the said Bernard Patton paid over to Thomas Maney through Daniel Lysaght out of the proceeds of the sale of said interest to said Curtin, the sum of twenty-three hundred dollars, and that said payment of said sum of twenty-three hundred dollars was

then and there made by Bernard Patton to Thomas Maney through said Lysaght with the fraudulent intent and purpose on the part of both Patton and Maney to hinder, delay, cheat and defraud Maney's creditors, and especially this plaintiff, out of Maney's interest in said property. The other $200, the balance of the $2,500 cash payment made by Curtin, was used in paying expenses of executing the deed of trust given to Thomas Ryan.

" 'The court further finds that payments have been made upon the three judgments hereinabove described at the dates and in the sums stated as follows: June 15, 1896, $2,500; June 22, 1896, $1,545; August 3, 1897, $1,455.45; February 16, 1898, $3,025.73. That after the payment of the said sums there now remains due and unpaid on said three judgments the sum of six thousand, seven hundred and forty-eight dollars and fifty-five cents.

" 'That on the 2d day of October, 1893, the State of Missouri at the relation and to the use of Ed L. Conrad, recovered in the circuit court of this county, judgment for $5,542.41 against James Walsh, Thomas Maney, Ferdinand Lutz, Louis Fuelling and others, on the said bond of said Walsh as administrator as aforesaid; this judgment was on November 13, 1894, for value received, assigned and transferred by Ed L. Conrad to George T. Hoagland, and on the — day of ——, 1894, said George T. Hoagland assigned and transferred said judgment to J. G. Schneider, plaintiff herein. That the State of Missouri at the relation and to the use of Charles A. Conrad, recovered in the circuit court of Buchanan county, Missouri, on October 2, 1893, judgment for thirty-nine hundred and eighty-five dollars and seventy-two cents against James Walsh, Thomas Maney, Ben Uhlman and Louis Fuelling, on the said bond of said Walsh as administrator as aforesaid; this judgment was on March 24, 1894, assigned by said Charles A. Conrad to John F. Tyler and Christian

Hubacher, and it was on June 29, 1894, assigned by John F. Tyler and Christian Hubacher, to Ferdinand Lutz and Louis Fuelling, two of the judgment debtors in said judgment.'

"The court then declared the law to be as follows:

" '1.   The court declares the law to be that the lien of plaintiff's judgment extended to all of Maney's right, title and interest in and to all the lands described in the findings of fact, whether his interest was shown by deed of conveyance to him, or whether it was held in the name of Bernard Patton for the use and benefit of Maney.   The lien of a judgment in this State extends to all the debtor's right, title and interest in and to his real estate in the county wherein said judgment is rendered, whether said interest be legal or equitable.

" '2.   When Bernard Patton purchased the lands described in the special findings, with the means, under the circumstances, and for the purpose and with the design, as stated therein, then he took said land under the law, as a trustee, for the use and benefit of plaintiff's said judgments, and he thereby became liable to plaintiff to the extent of Maney's undivided one-half part of said lands, or their proceeds, or so much thereof as might be sufficient to pay off plaintiff's said judgments.

" '3.   Bernard Patton can not even hold Thomas Maney's half interest in said lands, or the proceeds thereof, to secure the payment of any sum which Maney owed him, because of such fraudulent design and transactions.   The plaintiff is, therefore, entitled to a decree in this case, subjecting Maney's said interest in said land or the proceeds thereof, to the payment of his said judgments, more fully described in the findings of fact, in the manner and form as hereinafter stated.

" '4.   Dennis Curtin being a purchaser of Maney's interest in said land from said Patton, in good faith, for full consideration, without any notice or knowledge of Patton's and Maney's fraud acquired a good and per-

fect title to Maney's interest in and to said real estate, subject, however, to his obligation to pay the two thousand dollars and interest thereon, when due, the balance of the unpaid purchase price of said lands, as hereinafter stated.

" '5.   The plaintiff is entitled to a judgment and decree in his favor against Bernard Patton for the sum of twenty-three hundred dollars and six per cent interest thereon from July 29, 1896, to this date, which is three hundred and fifty-four and 57-100 dollars, making a total of twenty-six hundred and fifty-four and 57-100 dollars; and the plaintiff is entitled to a further judgment and decree against the defendants requiring said Dennis Curtin to pay the two-thousand dollar note executed by him to Bernard Patton, with the interest thereon, to the plaintiff at the maturity thereof, and that said Bernard Patton, within five days from this date, indorse, assign and transfer, without recourse, said two-thousand-dollar note to the clerk of this court, to be held by him for the use and benefit of the plaintiff until further ordered by the court.   In case Bernard Patton fails or refuses to so transfer said note to the clerk, then plaintiff will be entitled to a personal judgment against him for the full face value of said note and interest thereon since January 28, 1899.  The plaintiff is entitled to be subrogated to all the rights of the beneficiary, Bernard Patton, in and to said note and the deed of trust executed by said Dennis Curtin on said real estate to secure the payment thereof.'

"The following decree was then rendered:

" 'It is therefore ordered, adjudged and decreed that the plaintiff have and recover of the defendant, Bernard Patton, the sum of twenty-three hundred dollars with the interest thereon from July 29, 1896, to this date, which said interest being the sum of three hundred and fifty-four dollars and fifty-seven cents, making the amount, twenty-six hundred and fifty-four dollars and fifty-seven cents as the sum herein ordered, adjudged

and decreed that the defendant Bernard Patton pay to the plaintiff herein, with interest thereon from this day at the rate of six per cent per annum, which said sum is to be applied as part payment on plaintiff's said three judgments against Thomas Maney and others.

" 'It is further ordered, adjudged and decreed that the defendant, Dennis Curtin pay to the plaintiff at the maturity thereof, his said promissory note, dated the 29th day of July, 1896, executed by him to Bernard Patton for two thousand dollars, as the unpaid part of the purchase price of said interest in said land conveyed to him by the said Patton, which said note, by its terms, becomes due and payable February 4, 1899, and bears interest payable semiannually after the date thereof until paid, at the rate of seven per cent per annum, the payment of which said note of two thousand dollars is secured by a deed of trust, executed on the 29th day of July, 1896, by defendant, Dennis Curtin, conveying the interest said Curtin purchased of, in and to said lands for that purpose. It is further ordered, adjudged and decreed that the defendant, Bernard Patton, within five days from this date, indorse, assign and transfer without recourse on him, said two thousand dollar note to the clerk of this court, to be held by said clerk for the use and benefit of the plaintiff, until the further order of this court. It is further ordered, adjudged and decreed that the plaintiff be and he is hereby subrogated to all the right, title and interest of Bernard Patton, in and to said two-thousand-dollar note, and in and to the deed of trust executed by said Dennis Curtin to secure the payment of said note. It is further ordered, adjudged and decreed that in case the defendant, Bernard Patton fails or refuses to indorse, assign and transfer said two-thousand-dollar note to the clerk of this court, in accordance with this order and decree within five days from this date, the plaintiff herein shall have and recover of said Bernard Patton, the full face value of said note, which is two thousand dollars, together with

the interest thereon, up to January 28, 1899, to be applied as part payment in plaintiff's said three judgments against said Thomas Maney and others.

" 'It is further ordered, adjudged and decreed that plaintiff have and recover of defendants his costs in this behalf expended.'

"And thereupon, and on the 26th day of January, 1899, and within four days of the rendition of said judgment, and during the same term of court, defendant Patton filed his motion for new trial in words and figures as follows:

" 'Comes now the above named defendant, Bernard Patton, and moves the court to set aside its findings of fact and law and its judgment thereon rendered in this cause, and as grounds therefor states:

" '1. That the findings and judgments of said court should under the pleadings and evidence have been for the defendant.

" '2. That the said findings and judgment are against the evidence.

" '3. That the said findings and judgment are against the law and the evidence.

" '4. That the court erred in admitting illegal, irrelevant and incompetent evidence offered by plaintiff against the objection of defendant.

" '5. That the court erred in excluding proper, legal and competent evidence offered by defendant.

" '6. That the court erred in holding as a matter of law that the lien of the three judgments described in the petition, or either of them, was in force as against this defendant, at the time of the institution of this suit.

" '7. That the court erred in holding that under the evidence the judgments described in the petition, or either of them, were the property of plaintiff at the time of the institution of this suit.

" '8. That the court erred in holding that said judgments or either of them, were unsatisfied at the time of the bringing of this suit.

" '9.	That the court erred in holding that the lien of the judgments described in the petition, or either of them, attached to or became or was a lien or charge upon any interest of Maney in the lands described in the petition, or any of them, or on the notes and mortgage of the St. Joseph Brick & Terra Cotta Company, described in the petition.

" '10.	The court erred in holding as a matter of law under the pleadings and evidence, that lands described in the petition or any interest of Maney therein, were ever at any time charged with or subject to the lien of the judgments described in the petition.

" '11.	That the court erred in holding as a matter of law, that the plaintiff has any interest in or right to the note from defendant Curtin to defendant Patton, described in the petition.

" '12.	That the court erred in holding as a matter of law, that the plaintiff is entitled to judgment against this defendant for the sum of twenty-three hundred dollars and interest thereon, or any other sum.

" '13.	That the court erred in holding as a matter of law, under the pleadings and evidence in this case, that this defendant is not entitled to the sum of two thousand dollars and interest out of the proceeds of the sale to Dennis Curtin, mentioned in the petition and evidence.

" '14.	That the court erred in finding that this defendant was guilty of any act or had any intention at any time to hinder, delay or defraud the plaintiff or any other creditor of Maney.

" '15.	That the court erred in finding that there was no consideration for the transfer and indorsement to defendant of the five notes of the St. Joseph Brick & Terra Cotta Company except as stated by the court in its finding of fact.

" '16.	That the court erred in holding that Maney indorsed and transferred the five notes of the Brick & Terra Cotta Company to this defendant for the purpose

of hindering, delaying or defrauding plaintiff or any other creditor.

" '17. That the court erred in holding that this defendant bid for or obtained the land described in the petition, or any part thereof, at the trustee's sale of Thomas F. Ryan, for the purpose of concealing the interest of Maney in the same, or to hinder, delay or defraud any creditor of Maney.

" '18. That the court erred in finding that the sale of the land described in the petition to the defendant Curtin was made by defendant Patton for the purpose of concealing the interest of Maney therein or for the purpose of assisting Maney to cheat, hinder, delay or defraud the plaintiff or any other creditor.

" '19. That the court erred in finding that this defendant never held the five notes of the St. Joseph Brick & Terra Cotta Company for the purpose of securing the payment of any other debt than the sum of two thousand dollars due on the Tootle-Lemon note.

" '20. That the court erred in finding that twenty-three hundred dollars was paid by this defendant to Daniel Lysaght with the intention on the part of either this defendant or Maney to hinder, delay, cheat or defraud any creditor of said Maney.'

"And afterwards and during the same term of court, at which said term the motion for a new trial was filed, to-wit, the January term, 1899, the court upon consideration of said motion for a new trial, overruled said motion and modified the judgment theretofore rendered herein, which order overruling said motion and modifying said judgment was in words and figures as follows, to-wit:

" 'Now at this time the motion for a new trial in this case coming on to be heard, is by the court taken up, heard, considered and overruled, and the parties to this suit being present in court, and it appearing to the court that the defendant, Bernard Patton, has failed and refused, and still fails and refuses to deliver, indorse or

transfer to the clerk of this court, as heretofore ordered and decreed during this term of this court, the said promissory note for two thousand dollars, dated July 29, 1896, executed to Bernard Patton by Dennis Curtin, as and for the unpaid part of the purchase price of the interest in said land conveyed to said Curtin by said Patton, it is hereby ordered, adjudged and decreed that the defendant, Bernard Patton, is liable to plaintiff for the full face value of said note, which is the sum of $2,000, and also for the interest thereon from July 29, 1896, to this date, at the rate of seven per cent per annum, which interest amounts to the sum of $350, making the amount of said Bernard's liability to the plaintiff as shown by the evidence in this case on account of said note, the sum of $2,350. And now, in accordance with said Bernard Patton's absolute liability to the plaintiff for the amount, principal and interest, of said promissory note, the order, judgment and decree rendered in this case on the 23d day of January, 1899, during this term of this court, is hereby so modified as to deprive the said Bernard Patton of any further option on his part to deliver, indorse, assign or transfer said note to the clerk of this court, and it is hereby ordered, adjudged and decreed that the order, judgment and decree herein rendered on the —— day of January, 1899, during this term of this court, be and the same is hereby modified in accordance with this order of the court, and that the said judgment is so modified as to conform it to the order of the court now made, declaring said Patton's liability on the said two-thousand-dollar note to be absolute; and said order, judgment and decree as modified is as follows:

"'It is therefore ordered, adjudged and decreed that the plaintiff have and recover of the defendant, Bernard Patton, the sum of twenty-three hundred dollars with interest thereon from July 29, 1896, to this date, which said interest is the sum of three hundred and

fifty-four and 57-100 dollars, making the amount of twenty-six hundred and fifty-four and 57-100 dollars herein ordered, adjudged and decreed that defendant, Bernard Patton, pay to plaintiff herein on account of the sum fraudulently paid by him to Thomas Maney. And it is further ordered, adjudged and decreed that the plaintiff have and recover of defendant, Bernard Patton, the further sum of twenty-three hundred and fifty dollars, the amount due on account of the said Dennis Curtin note, making a total of the amount which is hereby ordered, adjudged and decreed that the plain-tiff recover of the defendant, Bernard Patton, of five thousand and four and 57-100 dollars, with interest thereon from this date at the rate of six per cent per annum, which said sum is to be applied as part payment of plaintiff's said three judgments against Thomas Maney and others, and that plaintiff have execution against the defendant, Bernard Patton, for the said sum of five thousand and four and fifty-seven hundredths dollars and interest thereon.'

"To which order overruling said motion for a new trial and modifying the judgment theretofore rendered, the defendant, Patton, at the time objected and excepted. And afterwards and during the same term of court at which said motion for a new trial was overruled, defendant Patton filed his affidavit for appeal in this case, which was allowed."

The petition in this case is an ordinary bill to set aside as fraudulent certain deeds to real estate described in the petition upon the ground that they were made by the grantor, Maney, with the fraudulent intent and purpose of evading the payment of certain judgments against him of which plaintiff is the assignee and to subject the land to the lien of said judgments, while the judgment rendered is a personal judgment against defendant Patton for the amount of money turned over

by him to Lysaght and by Lysaght to Maney, prior to the institution of this suit, and directed Patton to assign and turn over for the use of plaintiff, to the clerk of the circuit court, the promissory note executed by defendant Curtin to Patton, within five days, and in the event of Patton failing to so assign and turn over said note to the clerk of the court, judgment was rendered against him for the amount of said note and interest which, including the amount paid by Patton to Lysaght for Maney, amounted to the sum of $5,004.57, for which judgment was rendered.

No principle is better settled than that unless a judgment is responsive to the issues presented in the pleadings it is erroneous. [Ross v. Ross, 81 Mo. 84.] It is equally as well settled that a party can not state one cause of action in his petition and recover upon another, but that the decree which is awarded him must be authorized both by the facts stated in the petition and by the proof. [Reed v. Bott, 100 Mo. 62.] In Irvin v. Chiles, 28 Mo. 576, it is said that "a party is not entitled to a judgment on a finding of facts different from any theory of the case set up in the petition or answer." In Harris v. Railroad, 37 Mo. 310, it is said: "The statute permits a party to amend his petition after his evidence has been given, to make it conform to the proofs; but no such thing was attempted in this case. It then presents the singular spectacle of declaring for one cause of action, and obtaining judgment for another and different cause. . . . Such a course of procedure is destructive of all certainty in pleading, and can neither be tolerated nor encouraged." The same rule is announced in Newman v. Kenton, 79 Mo. 382.

While under the general prayer for relief a party may have any relief to which he may show himself entitled, such relief must be founded on and consistent with the allegations in the bill and not such as may be proven at the trial. [McNair v. Biddle, 8 Mo. 257.] The fact that plaintiff amended his petition during the

trial by adding to the prayer for general relief an additional prayer, ''for such personal judgments against the defendant as may be proper and legal,'' did not enlarge upon or broaden the allegations of the petition or the prayer for general relief, nor convert the petition into one charging Patton as being a fraudulent grantee, and as therefore taking said land as a trustee for the use and benefit of plaintiff to the extent of his judgments, on account of which he must account for the property or its proceeds, and, hence, be liable in equity to a personal judgment in favor of plaintiff for the amount of Maney's indebtedness to him. But the bill proceeds upon no such theory; upon the contrary, it is drawn with the view and purpose of divesting Curtin's title and to subject the land standing in his name to the payment of plaintiff's judgment.

The allegations of the petition which charged fraudulent conduct on the part of Patton are, that he held certain notes which belonged to Maney in his name, which he used for the purpose of paying for real estate, and that he held said real estate under and by a secret arrangement for the benefit of Maney, and that for the purpose of assisting Maney he transferred said property to Curtin. These are mere matters of inducement leading up to the averment which attempts to connect Curtin with said fund, that is, that Curtin was holding certain real estate of Maney's to cover it up from his creditors.

The petition in no way intimates, nor does it contain any allegation from which it can be inferred, upon what account, if at all, a personal judgment would be asked against Patton. It must, therefore, follow that the petition does not authorize the judgment, and as the court found and held Curtin's title good, and this being the only issue, there was nothing left upon which to predicate the decree rendered.

Moreover, we are unable to see how in this proceeding defendant Patton can be held liable to plaintiff, and

a personal judgment rendered against him in favor of plaintiff for the money which Patton turned over to Maney before the filing of the petition in this case.

In Swift v. Holdridge, 10 Ohio 231, it is said:

"An honest man will not take a fraudulent conveyance. If a man holds property fraudulently conveyed, as soon as he comes to a sense of his moral duty, he will restore it to those to whom it belongs. He ought to give it back to him from whom he received it, that it may be applied to his debts if wanted, or to his benefit if not wanted for this purpose. The law, to discourage frauds, does not compel him to restore it to the fraudulent grantor; yet no man will retain it for a moment who desires the reputation of honesty, or possesses the sense of justice. The relation between him and the creditors of the debtor are different. There are no express obligations between them, no promise to be accountable to them, no obligation to restore it to them, but the creditor ought to receive his debt, and the law gives him a claim to the property, and it charges the fraudulent holder as trustee, in consequence of his possession. The trust is not express-created by contract; but it arises by operation of law, in consequence of his having in his hands that which ought to be applied to the creditor's debt. It depends, therefore, on the possession of the property. The character of *cestui que trust* does not belong to the general creditor until he has shown himself entitled to the debtor's property, and if the fraudulent holder has in good faith divested himself of that which he could not retain without dishonesty, before the right of the creditor has accrued, there is nothing remaining upon which to raise a trust, and the relation of trustee to anybody subsists no longer. The court will lend to the judgment creditor any aid in their power to reach the property of his debtor in the hands of his fraudulent alienee, or to subject any debts, securities, rights, equities or choses in action within his power, and will exact a rigorous account of the dispo-

sition of anything he may have fraudulently received; but if he has honestly parted with what he fraudulently received, before the rights of the creditors are fixed by judgment and the filing of this bill, he must be exonerated from further liability.''

In Wait on Fraudulent Conveyances (3 Ed.), sec. 176, it is said: ''Though a party may have intended to defraud the creditors of a debtor by taking and converting his property into cash, such intent is rendered harmless by his delivering the proceeds of the sale to the debtor or his authorized agent. If the party has accounted to the debtor for the proceeds of the property before proceedings are taken against him by the creditor he can not be forced to account for it over again.''

It is insisted that as plaintiff had commenced garnishment proceedings against defendant Patton before the institution of this suit against him, he can not during the pendency of those proceedings ask the interposition of a court of equity; that having elected to pursue his remedy at law, his election was final until the termination of those proceedings. But no such matter is pleaded, and in order to be available, this should have been done.

It is said that Maney is a necessary party to this suit, and that the judgment should be reversed because he is not made a party defendant. As to whether or not a fraudulent grantor is a necessary party defendant in an action brought by his judgment creditors against the fraudulent grantee to set aside the conveyance of real estate for fraud and to subject it to the payment of the judgment, the authorities are in great conflict and irreconcilable. In this State, however, it has been held that as the fraudulent grantor could be prejudiced in no way, in a legal sense, by a determination which subjected the property to the payment of his debts which had already irrevocably passed beyond his control, he has no interest in the suit, and is therefore not

a necessary party.    [Merry v. Fremon, 44 Mo. 518; Jackman v. Robinson, 64 Mo. 289.]

Plaintiff claims that no motion for new trial was filed after final judgment, and that therefore there is nothing before the court for review save the record proper. It appears from the record that on the 23d day of January, 1899, the court found its conclusions of fact. It then gave some declarations of law. It then ordered, adjudged and decreed that plaintiff recover of defendant, Bernard Patton, the sum of $2,300, with interest up to that time, amounting to $2,654.57. It further ordered and decreed that the defendant, Bernard Patton, within five days from that date, indorse, assign and transfer without recourse on him, the two-thousand-dollar note which he held on Dennis Curtin, to the clerk of the court, to be held by the clerk for the use and benefit of plaintiff until the proper order of the court, and that plaintiff be subrogated to all the right, title and interest of Bernard Patton in said two-thousand-dollar note and deed of trust executed by Dennis Curtin to secure the payment of said note. It is further ordered, adjudged and decreed that in case the defendant, Bernard Patton, should fail or refuse to indorse, assign and transfer said note to the clerk of the court in accordance with the order within five days from that date, the plaintiff herein shall have and recover of Bernard Patton the full face value of said note, which is $2,000, together with interest thereon up to January 28, 1899, to be applied as part payment on plaintiff's three judgments against Maney and others.

On the 26th day of January, the motion for a new trial was filed. On the 4th day of February this motion was overruled, and as part of the same order a final judgment was rendered against appellant, not only for the $2,654.57, but for the further sum of $2,350, the amount due on account of the Dennis Curtin note, making a total amount adjudged against him of $5,004.57.

Plaintiff says that the order made on the 23d of

January, 1899, was not a final judgment. "No execution could have been issued thereon. It defined the respondent's rights and simply declared that unless the defendant, Patton, within five days deposited the Dennis Curtin note with the clerk in accordance with the order, a final judgment would be rendered against him. This order was certainly not a final judgment. No final judgment was rendered until February 4, 1899, and the judgment rendered on that date is the only judgment in this case."

State ex rel. v. Klein, 140 Mo. 502, was a condemnation proceeding in which the defendant had been awarded $87,510 by the commissioners, which had been paid and received by him, and on appeal to the circuit court this award was reduced to $47.900 by the jury, and the plaintiff filed a motion asking for judgment for the excessive payment or for $39,610. This motion was sustained, but the court further ordered that such sum should not bear interest, nor should execution issue therefor or be a lien upon defendant's real estate, "until the further order of the court." *Held,* that this was not a final judgment. That a final judgment means one that can be enforced by execution; one that bears interest and is a lien on real estate.

St. Louis v. Boyce, 130 Mo. 572, and Railroad v. Railroad, 94 Mo. 535, are the same kind of cases, and the ruling the same. It is very clear that no final judgment had been rendered in either of those cases at the time of filing motions for new trial, but is such the fact in the case at bar? If there was anything in the decree which was rendered before the motion for new trial was filed tending to show that a final decree had not been rendered at the time the motion for new trial was filed, it is that part of it which required defendant Patton, within five days from the time the decree was rendered, to indorse, assign and transfer without recourse on him the $2,000 note executed by Curtin to him, to the clerk of the court, to be held by said clerk for the use and bene-

fit of the plaintiff, until the further order of the court, and, in the event of his failure to do so within the time indicated, "the plaintiff should have and recover of Patton, the full face value of said note which is two thousand dollars together with the interest, up to January 28, 1899. . . . It was also further ordered, adjudged and decreed that plaintiff have and recover of defendants his costs in this behalf of defendants." The facts that this decree provides that if Patton did not turn over the note in question to the clerk of the court within five days, when at the same time it was also provided in the decree that in the event of his failure to do so plaintiff shall have and recover of said Bernard Patton the full face value of said note, which is two thousand dollars, together with interest thereon up to January 28, 1899, and that costs were then adjudged against defendants, clearly show that it was then a final decree, with the privilege to defendant Patton of complying with it in five days by turning over the note to the clerk, during which time an execution could not.have issued upon it, but at any time thereafter in the absence of a showing by Patton that he had turned over the note as directed, plaintiff could have sued out an execution on the judgment without further action on the part of the court, unless a supersedeas had been granted to prevent it. And the fact that the court thereafter made some changes in the decree did not rob it of its integrity of a final decree.

In 1 Black on Judgments (2 Ed.), sec. 41, in speaking of the finality of decrees, it is said: "Another case, coming much nearer to a satisfactory definition, holds that a final decree is not necessarily the last decree rendered, by which all proceedings in the case are terminated, and nothing is left open for the future judgment of the court; but it is a decree which determines the substantial merits of the controversy—all the equities of the case, though there may remain a reference to

be had, or the adjustment of some incidental or dependent matter." [Walker v. Crawford, 70 Ala. 567.]

In Travis v. Waters, 1 John. Ch. 84, it is held that a decree on a bill for specific performance, on the coming in of the master's report, as to the quantity of land to be conveyed and the payments made, directing the balance due to be paid, and the conveyance to be executed, is a final decree. So it has been held that a decree that defendants should assign a certificate of lands to the plaintiff, provided he should, before a given day and after a tender of the assignment, pay a certain sum of money to them, is a final decree. [1 Black on Judgments (2 Ed.), sec. 43.]

It is clear that if Patton had turned the note in question over to the clerk within five days from the date of the decree as therein provided, no one would gainsay the fact that the decree was final when entered upon the record of the court, with a limited time to Patton to comply with its terms, which did not in any way affect its finality, and, if this be so, it is none the less final because he failed to turn over the note as required by the decree.

For the reasons intimated the judgment should be reversed and the cause remanded. It is so ordered.

All of this Division concur.