FIRST NATIONAL BANK, Appellant, v. NELLIE VOGT.—126 S. W. (2d) 199.

Division Two, March 15, 1939.

*D. S. Mayhew* for appellant.

*Emory C. Medlin* and *Royal Elles* for respondent.

LEEDY, J.—The plaintiff, as a creditor of W. A. Weisman, whose claim has been reduced to judgment since the institution of this suit, brought this action, the object of which is to set aside a warranty deed by said Weisman, and his wife, Lavonia, to their daughter, the defendant, Nellie Vogt, and to subject the real estate conveyed thereby to the lien of said judgment (subject to the right of homestead in said Weisman), on the alleged ground that the deed was voluntary and without consideration, and made for the purpose of hindering, delaying and defrauding the creditors of said Weisman, and particularly the plaintiff. Upon a trial, the chancellor found the issues for the defendant, and entered a decree by which it was adjudged that said deed "is valid and subsisting and conveyed good title to Nellie Vogt."

Weisman and his wife lived on a farm in Barry County until in October, 1932, when they acquired title to the two improved lots in Monett, here in question, and moved thereto, and thereafter occupied the same as their home. The conveyance thereof to their daughter was dated June 22, 1933, but the deed was not recorded until October 7 of that year. Weisman and his wife were indebted to the

plaintiff bank on their several promissory notes, introduced in evidence, a part of which indebtedness extended back as far as 1926, and, by renewals, had been extended from time to time. So that on the date in question they owed plaintiff something in excess of $500. Defendant was acquainted with that fact, she having witnessed the signatures to some of the notes, as well as a financial statement made by her father to the bank sometime in February, 1932.

Something more than twenty years before the trial—the exact time does not appear—defendant and her husband, who were then living in the State of Oregon, separated, and she and her two infant daughters returned to her father's home in Barry County, where a third child, a daughter, was thereafter born. She and the children continued to live at the Weisman home for many years, where the children grew to womanhood. The record is by no means clear as to who defrayed the expenses of their living—whether defendant or her father. But during that time, defendant was employed in a garment factory at Monett for a period of five years, and later at such a factory in the neighboring town of Neosho for three years. She testified that her earnings, while so employed, averaged $60 or $70 per month; that while in Neosho, she paid $20 a month for board and room, and sent the rest home "to be applied." In 1930, by a property settlement with her estranged husband, she received the sum of $500, and an additional sum of $100 out of some property in Barry County in which her husband had an interest. These sums appear to have been paid to her in installments.

The defense was that during the years following her return from Oregon, and while living with her parents, she had made loans to her father aggregating the sum of $1,550, and that some six months before her father traded for the lots in controversy, to evidence his said indebtedness to her, he made and executed his promissory note for the sum just mentioned; that the deed in question was made to her in payment of said indebtedness, as represented by said note, together with the additional sum of $500, which she agreed to pay, and for which she gave him her unsecured note, and thereafter paid in part. Credits aggregating $410 were endorsed on the note which the defendant claimed as follows: $162 for money she advanced to pay the principal and interest on the mortgage given by Weisman and his wife when they acquired the property in question from one Boehm, which mortgage was given to secure the payment of taxes due on the Weisman farm which was traded to Boehm; $208 for funeral expenses for her mother (she having died since the institution of this suit) which the defendant testified she paid; two items of $20 each representing expenses in connection with the place, the exact nature of which do not clearly appear.

It is conceded the deed stripped Weisman of every vestige of property he owned. The defendant testifying in that behalf said: "My

father is still living in the same property he deeded to me. He has no other property of any kind or character whatsoever." On behalf of the plaintiff the three or four witnesses on the question fixed the value of the real estate in controversy at sums varying between $2,700 and $3,000. A like number called by the defendant fixed the value thereof at $1,800 to $2,000. Upon this conflicting evidence the chancellor found the value to be "$2,000 and no more."

As hereinabove noticed, the defendant did produce the $1,550 note made by her father to her, but she admitted that when it was made she had kept no account of the amount he owed her, or the money she sent home while in Neosho—"We just made an average" and arrived at the figure, $1,550. On the record before us it must be conceded that evidence of the extent, items, date and character of the alleged indebtedness between father and daughter is scant and inconclusive. When it is sought to sustain a conveyance under the circumstances here present, "a chancellor looks anxiously for corroborative proof, or, failing in that, . . . for those badges of good faith, arising from specification in details, date, amount and other indicia earmarking the ordinary run of business transactions, and making the proof fairly certain. [Cole v. Cole, 231 Mo. 236, 132 S. W. 734.] Turning to the record we find that when the defendant was being cross-examined, the plaintiff was seeking to inquire into the circumstances surrounding the execution of the $1,550 note, and to develop the facts in relation thereto. In that connection, the following pertinent question was propounded by plaintiff's counsel: "What was the discussion between you and your father?" To which defendant's counsel interposed the following objection: "I object to him cross-examining her. She testified this note was given for money she loaned to her father." The ruling of the court was, "Sustained." We think it palpably erroneous, and resulted in unduly restricting the cross-examination.

A like situation arose with respect to the credits on the daughter's note when she was asked where she got the money with which to pay the $500 note, as shown by the following excerpt:

"Q. I will ask you where you got the money to pay the $500 with.

"By Mr. MEDLIN: It is none of his business where she got the money. I object to that.

"By the COURT: Sustained.

"By Mr. MAYHEW: This is a case where we charge fraud, and this is cross-examination, and we can inquire where she got those funds.

"By the COURT: Objection sustained."

Furthermore, after defendant had testified to the consideration for the deed as hereinabove set out, the following occurred on her cross-examination:

"Q. Why was it this consideration wasn't put into the deed?

"By Mr. ELLIS: I object to that.

"By the COURT: Sustained."

These· excerpts are illustrative of the restrictions placed upon the cross-examination of the defendant touching the basic point of inquiry.

■ The father was not joined as a party; this, doubtless, under the applicable rule in this State to the effect that an alleged· "fraudulent grantor could be prejudiced in no way, in a legal sense, by. a determination. which subjected the property to .the. payments of his debts which had already irrevocably passed beyond his control, he has no interest in the suit, and is therefore not a necessary party." [Schneider v. Patton, 175 Mo. 684, 75 S. W. 155.] We observe in passing, however, that he is not, on that account, rendered incompetent as a witness. His knowledge touching the alleged indebtedness to his daughter was equal to that possessed by his daughter, the defendant. The evidence showed he was still living with defendant at .the time of the trial, and the fact of his availability as a witness, although· not called by either party, may be significant. ■ We are not bound by defendant's mere assertion that her father was indebted to her in the manner detailed. If such indebtedness was bona fide, there can be no question of his right to convey the lots to her in payment of the debt (Hume v. Wright (Mo.), 274 S. W. 741, · and cases cited), and he had the legal right to, in good faith, prefer her over other creditors. [Friedel v. Bailey, 329 Mo. 22, 44 S. W. (2d) 9.] ■ On the other hand, transactions between near relatives may (Matz v. Miami Club Restaurant, 108 S. W. (2d) 975 in connection with other circumstances (such as fictitiousness of consideration, the transfer of all or nearly all of his property by a debtor when he is insolvent, the failure of the parties to produce available explanatory or rebutting evidence when the circumstances under which a transfer is made are suspicious.) furnish satisfactory proof of fraud. The pivotal issue in the case was the consideration for the deed, and as shown by the rulings hereinabove set out, we are left in such a position as to be unable to determine that question upon the record before us. We, therefore, reverse the decree, and remand the cause to the circuit court, so that upon another trial the facts in relation to that issue may be adequately developed. All concur.