LOLA WRIGLEY v. ALVA WRIGLEY and ELIAS WRIGLEY, Appellants.—
131 S. W. (2d) 989.

Division One, November 3, 1939.

208

*Breit & Roberts* for appellants.

*Lloyd W. Booher* and *Ralph R. Hulse* for respondent.

DALTON, C.—This is a suit in equity to set aside an alleged fraudulent conveyance of real estate. Plaintiff is the former wife of defendant Alva Wrigley. Alva Wrigley and Elias Wrigley, his father, are defendants. Plaintiff, on November 21, 1935, had obtained a decree of divorce, the custody of two minor children, and a judgment against Alva Wrigley for $25 per month, beginning

March 1, 1936, for support and maintenance of said minor children. The present suit was instituted after six monthly installments accrued under the judgment and remained unpaid. The deed sought to be set aside was from Alva Wrigley to his father, and conveyed a house and lot located in the city of Savannah, Andrew County, Missouri (hereinafter referred to as the town property).

At the time the divorce was granted a property settlement was made. Plaintiff took a 159-acre farm, and Alva Wrigley the town property, but plaintiff paid a difference of $1500 in cash. After the decree was entered the plaintiff executed and delivered a conveyance to Alva Wrigley covering the said town property and Alva Wrigley executed and delivered to plaintiff a deed to the 159-acre farm on which the parties had resided.

Before any installments of maintenance accrued under the said judgment, defendant Alva Wrigley paid the attorney's fees, the court costs, the temporary alimony, and certain creditors. Thereafter, by quitclaim deed reciting a consideration of $1 he conveyed the said town property to his father and divested himself of all his assets.

The trial court found that the deed was executed without consideration for the purpose of defrauding plaintiff and defeating her in the collection of her said judgment; and that the conveyance was accepted by Elias Wrigley with the full knowledge of the intention and purpose of Alva Wrigley to so defraud plaintiff. The court declared the deed to be fraudulent and void and ordered the same, canceled and set aside. After unsuccessful motions for a new trial and in arrest of judgment the defendants have appealed.

Appellants contend that Alva Wrigley was indebted to his father; that he had the right to prefer his father as a creditor; that the conveyance was made and accepted in good faith, in payment of a pre-existing debt; and that it was not in fraud of respondent's rights, or to hinder, delay or defraud any creditor.

In view of appellants' contentions the determinative question in the instant case is one fact, as to whether or not at or before the conveyance in question, Alva Wrigley was indebted to his father Elias Wrigley. In an equity case we are not bound by the findings of the chancellor, but will review the record and reach our own conclusions as to the weight and value of the evidence. We must give due deference, however, to the findings below, since the trial chancellor had an opportunity to see the witnesses and to hear and observe these witnesses on the stand. [Fessler v. Fessler, 332 Mo. 655, 670, 60 S. W. (2d) 17, 23; People's Bank of Memphis v. Jones, 338 Mo. 1048, 1055, 93 S. W. (2d) 903, 907.]

Respondent and Alva Wrigley were married in 1928. In 1929 they purchased the said town property for $3000. Appellant Elias Wrigley furnished $1050 to be used in buying the property. Respondent testified that the money was a gift; and that Elias Wrigley said his

other son had gotton that much money and that he wanted to give Alva some money. Respondent was corroborated by one Mrs. Hulse who testified that Elias Wrigley stated that his other son "had been given plenty," and had said to Alva and respondent, "I am giving this to you kids." The father and son denied that any such conversations took place.

At the time the town property was purchased Alva Wrigley was expecting an inheritance from his maternal grandfather's estate, and, shortly thereafter, he received a total of $11,000 from said estate. When these funds were received the father made no demand for payment of the son's alleged indebtedness, and the son made no effort to pay the father, either principal or interest, although for a time, by reason of the inheritance, the son became worth more than the father. Alva Wrigley purchased a farm, with part of his inheritance, and thereafter resided on it. Alva and his father farmed together and the father kept some of his stock on Alva's farm. It was fed by Alva. During this period the father, from time to time, furnished money to his son: $262.50 on a Ford truck, $100 on an International truck, $43 for an installment on a truck, $147 for interest on a mortgage on the farm, $260 for expenses in roofing the barn, $30 on the purchase price of two horses, and various payments of money totaling $85. Elias Wrigley also gave his son twenty-four shoats worth $3 each, a cow worth $150, a cow and calf worth $82, 100 posts worth $18, seed oats worth $10, and other minor items. Elias Wrigley conceded that the cows and calf and some minor items were gifts, but insisted that the remaining items were charged to his son. The father testified that he expected to be repaid "Whenever they could get hold of it to pay up, if it was not too long." The son testified, "I always had that intention, that if I was ever able . . . I was going to return it to him." However, the father made no demand for payment and kept no account. The father admitted that he relied on the son's memory as to the amount of the alleged indebtedness.

Although appellant Alva Wrigley received the inheritance of $11,000, and later, at the time of the settlement with respondent received $1500 in cash, the father at no time requested any payments from the son, and did not otherwise indicate that he considered the son indebted to him. Immediately after the divorce Alva Wrigley made a trip to Detroit and purchased a tractor and an automobile. The title was taken in the name of Elias Wrigley. Elias Wrigley claimed he furnished the purchase money for both. The son, however, used the automobile almost continuously, and made two or three trips to Texas with it. On cross-examination Alva Wrigley accounted for the following amounts paid out of the $1500, which he received in the divorce settlement, to-wit: $250 attorney's fees, $125 temporary alimony, $50 for physicians' services, $25 for groceries and $50 for court costs. The balance was accounted for by saying, "Well, I

had expenses.'' None of it was paid to the father, and none for the support of the children.

Elias Wrigley was present in the court room during the hearing of the divorce case and at the lawyer's office after the settlement was made but insisted he took no part in the settlement. The divorce decree and maintenance judgment was entered November 21, 1935. On the following day Alva Wrigley, of his own initiative and in the absence of his father, undertook to estimate his alleged indebtedness to his father. He estimated the amount at $2745, which was said to include the 1929 advancement of $1050, together with six years of compound interest, and other items. He executed a note on that date for $2745 and delivered it to his father. Appellants admitted that the amount of the note was based on the memory of Alva Wrigley. When it was delivered the son asked the father, ''if it was all right for the amount he owed him,'' and the father said it was.

At the hearing of the cause the note was identified by Elias Wrigley who testified that it had been delivered back to Alva Wrigley at the time of the delivery of the deed. The son testified, however, that the conveyance was only ''a part payment'' on what he owed his father. The note was not ''marked up,'' credited, or canceled. Alva Wrigley testified the note included all indebtedness to his father, but the father said the note covered only the $1050 advancement with compound interest thereon, and not the other items.

Subsequent to the execution of the note, and still without any request or suggestion from the father the quitclaim deed covering the town property was prepared and delivered. The deed is dated February 13, 1935, and was acknowledged and recorded on February 25, 1935. The father had nothing to do with the preparation of the deed and did not know that a conveyance was contemplated until the deed was delivered to him. He did know, however, that the deed covered all the property that the son owned. He said that it was the only way the son had to pay him. At the time of the conveyance the property was estimated by various witnesses to be worth from $1250 to $2000. The father also took over the son's International truck, allowing him $100 for it.

After the date of the divorce decree Alva Wrigley resided with his parents on a farm and helped his father with the work. He received no cash payments, and was not interested in the crops, but did receive his board and room. At different times he assisted one Howard in automobile repairing for which he received from $1.50 to $8 per week on jobs. At no time did Alva Wrigley pay anything at all toward the support of his said children or upon the said maintenance judgment. Except for the alleged indebtedness to his father, and the judgment of respondent, there was no evidence that Alva Wrigley was otherwise indebted to anyone.

We must first determine whether the trial court arrived at

a correct conclusion when it found that "no consideration passed from Elias Wrigley" at the time of the said conveyance. A careful reading and consideration of the testimony in this record has led us to the conclusion that, not until after the divorce decree was entered, did Elias Wrigley consider that his son was indebted to him in any sum. The fact that no memorandum was made, no note was given at the time funds were advanced, no acounts kept, and no demand for payment ever made, indicates to us that all advances were intended as gifts. Even though the son received large sums of money after some of the alleged indebtedness was incurred, and apparently spent money liberally, the father at no time demanded payment or otherwise evidenced a state of mind indicating that he considered the son indebted to him. We are not bound by mere assertions that the son was indebted to the father. We must determine the facts from a consideration of all the evidence. Both father and son testified that, even after the divorce, the father evidenced no concern about the alleged indebtedness, and at no time undertook to determine the amount of the same. According to appellants' testimony the father took no initiative in securing either the note or the deed. He merely agreed to receive and accept first the note, "as satisfactory," and, later the deed as "part payment" of the alleged indebtedness. Both the note and deed were prepared after the judgment for maintenance was entered and before any payments accrued thereunder. No reason is suggested by appellants for the son's action at the particular time. We think the trial court correctly inferred that the real reason for the conveyance was the fact that installments for maintenance were soon to accrue. We have reached the conclusion that no indebtedness existed and that the trial court properly found that the conveyance was entirely voluntary and was not made in payment of any pre-existing indebtedness. No right, therefore, of Alva Wrigley, to prefer one creditor over another is involved here.

It is admitted that the father was acquainted with the facts and circumstances surrounding the granting of the divorce and the award of custody of the children to respondent. He knew that the acceptance of the deed in question would result in leaving the son without any property or other assets for the payment of the judgment to respondent. The circumstances are such that we may infer that the father knew the real purpose of the conveyance and acquiesced therein. In the case of a voluntary conveyance, however, proof of actual fraud on the part of the grantee is not essential in determining whether or not the conveyance may be set aside. [Godschaux Sugars v. Quinn (Mo.), 95 S. W. (2d) 82, 83; Conrad v. Diehl, 344 Mo. 811, 129 S. W. (2d) 870, 878.]

The judgment for maintenance was entered pursuant to Section 1355, Revised Statutes 1929 (Mo. Stat. Ann., sec. 1355, p. 1564). Nothing was due on the judgment at the date of the conveyance, and

there is no claim that the judgment was a lien. It has been held (but we do not decide), "that a lien does not follow the entry of a judgment for the maintenance of minor children, payable in future periodical installments, and subject to be increased, diminished, or defeated altogether as changed conditions of the parties may from time to time require." [Hagemann v. Pinska, 225 Mo. App. 521, 530, 37 S. W. (2d) 463, 467.]

■ We think it immaterial to any issues in this case, that at the time Alva Wrigley conveyed the town property to his father he was not indebted to respondent in any sum under the said judgment. Respondent had the custody of the said minor children, and the judgment for maintenance, and, it was reasonably certain that installments for the maintenance of the children would accrue to respondent. It is apparent that appellants expected them to accrue. Installments did accrue and remained unpaid. No application to alter the allowance or change the custody was pending at the time of the conveyance and there was no evidence of a change of condition justifying alteration of the allowance or change of custody of the children. The duty to provide support and maintenance for his minor children rested upon appellant, Alva Wrigley. [Kelly v. Kelly, 329 Mo. 992, 47 S. W. (2d) 762; Mayes v. Mayes, 342 Mo. 401, 407, 116 S. W. (2d) 1, 4.] It was a matured obligation. [Pickel v. Pickel, 243 Mo. 641, 662, 147 S. W. 1059.]

Section 3117, Revised Statutes 1929 (Mo. Stat. Ann., sec. 3117, p. 1946), provides: "Every conveyance . . . of any estate or interest in lands . . . made or contrived with the intent to hinder, delay or defraud creditors of their lawful actions, . . . debts or demands, . . . shall be from henceforth deemed and taken, as against creditors and purchasers, prior and subsequent, to be clearly and utterly void." We therefore hold that it was immaterial to any issues in this case that the amount due upon respondent's judgment at the date of the institution of this suit, accrued subsequent to the conveyance of the property to Elias Wrigley. [Snyder v. Free, 114 Mo. 360, 372, 21 S. W. 847; Cole v. Cole, 231 Mo. 236, 259, 132 S. W. 734; Maze v. Griffin, 65 Mo. App. 377, 385.]

In view of all the evidence in this cause we must conclude that the conveyance in question was made for the purpose of avoiding an obligation imposed by law, and evidenced by respondent's judgment. The voluntary transfer of all of the son's property to his father, under the circumstances disclosed of this record, affords reasonable ground for our conclusion that the intent with which it was made was to put all of the son's property beyond the reach of respondent's judgment. The accomplishment of that purpose was a fraud upon respondent's rights. Transactions between father and son may in connection with other circumstances (such as fictitiousness of consideration, the transfer of all of the son's property to the father after

the judgment for maintenance had been entered, and other facts appearing in the record) furnish satisfactory proof of fraudulent intent. [Hendrix v. Goldman (Mo.), 92 S. W. (2d) 733, 736; First National Bank of Monett v. Vogt, 344 Mo. 284, 126 S. W. (2d) 199, 201.]

The judgment of the trial court should be affirmed, and it is so ordered. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.