Dona BALCH, Respondent,

v.

Mary WHITNEY, Appellant.

No. 43833.

Supreme Court of Missouri.

Division No. 1.

Dec. 13, 1954.

Cletus E. Rudolph, St. Louis, Oliver F. Erbs, St. Louis, for appellant.

Philip A. Foley, Clayton, for respondent.

LOZIER, Commissioner.

Plaintiff-respondent (herein called plaintiff) sued to set aside an alleged fraudulent conveyance of an undivided one-half interest in a house and lot in Wellston. Defendant-appellant (herein called defendant) denied that the conveyance was fraudulent, alleged that it was for a valuable consideration, and asked determination of title and partition. The trial court found for plaintiff. Defendant appealed. As title to real estate is involved, this court has appellate jurisdiction. Sec. 3, Art. V, Const., 2 V.A.M.S.

Defendant's principal contention is that the trial court erred in finding for plaintiff in that plaintiff failed to sustain her burden of proof.

Defendant is the sister of Clarence Balch, plaintiff's former husband. The Balches, who had owned the property by the entirety, were divorced on July 17, 1950. The decree awarded instant plaintiff $100 a month alimony, allowed her $250 attorney's fees and ordered Balch to give a $2,500 bond as security for payment of alimony. Balch never gave the bond or made any payments for alimony, attorney's fees or costs. No execution was ever issued.

By deed dated July 24, 1950, and filed for record the next day, Balch quitclaimed to defendant his right, title and interest in the property. The recited consideration was $100 and the deed bore $2.20 cancelled revenue stamps.

Plaintiff's theory was that defendant paid Balch no consideration and knew that Balch made the conveyance for the sole purpose "of defrauding plaintiff of her right to collect said alimony and * * * to have said bond posted" and that defendant "accepted said property solely and only for the purpose of defeating plaintiff's rights therein." Defendant's evidence was that Balch conveyed to her in repayment of $1,700 cash loans made by her to the Balches.

Defendant, her husband and Balch testified that, in 1939, after the Balches bought the property, they came to defendant's home and asked her to loan them $700 to be used in repairing the property, and that she (defendant) gave Balch $700 in cash; that in 1946, she loaned them $500 in cash to apply on the purchase of a Buick automobile; that in 1947 she loaned them $500 in cash to apply on the purchase of a Chevrolet automobile; that in none of those instances did she then or thereafter ask for or receive a note or a receipt, make a memorandum thereof, enter the item on her books or mark it off as a "bad debt" on her income tax return; that while she and Balch had "talked it over," she had never made a demand of either of the Balches for repayment or for security; that she had been repaid no part of the $1,700; that she had loaned Balch $10, $15 at other times. Defendant said that she "would give him (Balch) the last thing I have."

Defendant said that she did not suggest that Balch execute the deed and that the idea was his. When she "took his interest in the house," she "hadn't figured on that; it didn't enter my mind at the time until he offered it to me and I said I would accept it. * * * After the divorce he asked if I would accept it, and I said, 'I think I am entitled to the $1,700,' and he said, 'This is all that is left; if you want that I will turn it over to you,' and that is how it happened." She was not present when Balch's attorney drew the deed. The first she knew of it was when Balch telephoned her; she accompanied him to the courthouse and, in her presence, he filed the deed for record. She said that she paid him the $100 recited consideration and reimbursement for $3.65 for the stamps and recording fee, but forgot "where we were then," possibly at her home.

Defendant said that she did not write or tell plaintiff that she claimed a one-half interest in the property under the deed. She mentioned the matter to plaintiff once, about six months after the divorce, when plaintiff telephoned defendant "concerning my brother" and defendant told plaintiff that she (defendant) wanted "to see her some day and get the property deal settled" and that she (plaintiff) was in the house and not paying her (defendant) any rent.

Balch's attorney in the divorce suit (and defendant's attorney in this case) testified that, prior to the divorce, he advised Balch that, in the event of divorce, Balch and plaintiff each would own an undivided one-half interest in the property; that, after the divorce when Balch asked him to prepare the deed, Balch said he owed his "sister a lot of money and I am giving her my interest in the house for what I owe her"; and that he (the attorney), with knowledge of the court's order as to the $2,500 security bond, again advised his client that he could legally convey his interest to defendant.

Plaintiff testified that she made the down payment on the property and thereafter paid off the mortgage out of her separate funds; that she had had undisturbed possession of, and had paid the taxes on, the property since the divorce; that she paid for the 1939 repairs out of money she had when she married Balch; that she paid the $900 for the Buick automobile in 1946 by $600 "trade-in allowance" for her DeSoto automobile and $300 by check ("I have the cancelled check") and that she paid for the Buick automobile in 1947 by paying the balance (she traded in the Chevrolet automobile) partly in cash and partly by check. Plaintiff denied that she and Balch ever borrowed money from defendant—"we didn't need to. We had money of our own all the way through."

There was evidence concerning the testimony given at the divorce trial as to Balch's financial condition and as to his having fraudulently secured and cashed duplicate postal savings bonds (totaling $2,500) paid for by plaintiff but issued in his name, the originals of which she still held at the time of the instant trial. Balch's attorney in the divorce suit (and defendant's attorney in this suit) testified that when Balch asked him to prepare the deed, Balch stated, "I am broke." As stated, defendant testified that when, after the divorce, Balch offered to convey to her, he told her that his one-half interest in the property "is all I have left."

Upon cross-examination, plaintiff first said that she had not remarried since the divorce and, specifically, had not married one Frank J. Bruns and then stated that she went to Piggott, Arkansas, to marry Bruns in January 1952. She admitted that she had applied for appointment as, and had been appointed, administratrix of Bruns' estate. In her rebuttal, plaintiff offered evidence (her own testimony and that of her attorney) that the marriage certificate was not in Bruns' deposit box (where Bruns had told her it was) and that the records in Piggott, Arkansas, did not show the marriage; that her attorney had expressed doubts as to being able to establish the marriage and had advised her, if asked the question at the instant trial, to state that she had not remarried since the divorce.

■ We try this equity case de novo, review and weigh the evidence, deferring to the trial court's findings involving the credibility of witnesses. Wrigley v. Wrigley, 345 Mo. 207, 132 S.W.2d 989, 990 [1, 2].

■ Plaintiff had the burden of proof as to the fraudulent nature of the conveyance. Castorina v. Herrmann, 340 Mo. 1026, 104 S.W.2d 297, 302 [23–29]; Farmers & Merchants Bank of Festus v. Funk, 338 Mo. 508, 92 S.W.2d 587, 589 [1, 2]. As stated, defendant's principal contention is that plaintiff failed to sustain that burden. Defendant argues that Balch had the right to convey his interest because her (defendant's) evidence showed "proof of the several loans aggregating $1,700 and that the property was conveyed in satisfaction of that debt"; and that plaintiff's denials of the alleged loans should not be given any weight because plaintiff was "thoroughly discredited" as a witness.

Plaintiff unequivocally denied that defendant had ever made the three loans to plaintiff and Balch and explained in detail how she herself paid, out of her own funds, for the repairs and the two automobiles, the items for which defendant claimed she had advanced $700, $500 and $500, respectively, to the Balches. (Too, it may be reasonably inferred from defendant's evidence that, even if defendant gave Balch the $1,700, the three items were gifts to her brother.

Note that, under her own testimony, she never treated the items as loans until after the divorce. Note that she took no receipts or notes, did not enter the items upon her books or mark them off as "bad debts," never demanded payment or security from either Balch or plaintiff. Note that she "hadn't figured" on taking the deed, "it didn't enter my mind until he offered it to me." Note that she would give her brother "the last thing I have." Compare Wrigley v. Wrigley, supra, 132 S.W.2d 991 [3].)

■ Plaintiff's inconsistent testimony as to her remarriage was a matter of impeachment, one involving her credibility as a witness. In view of the explanation made by plaintiff and her attorney, we may not say that her testimony as to the alleged loans was not credible. We defer to the trial court's determination that she was a more credible witness than defendant, defendant's husband and Balch. Collins v. Shive, Mo., 261 S.W.2d 58, 64 [5, 6].

■■ Defendant argues that there was no evidence that defendant, when she accepted the deed, knew that Balch made the conveyance for the purpose of defrauding plaintiff. While the record strongly supports the inference that defendant did know of Balch's purpose, the rule is: "In the case of a voluntary conveyance, * * * proof of actual fraud on the part of the grantee is not essential in determining whether or not the conveyance may be set aside." Wrigley v. Wrigley, supra, 132 S.W.2d 992 [4, 5].

■ Our examination of the record has convinced us that the trial court properly decided that the conveyance was without consideration. Compare Wrigley v. Wrigley, 345 Mo. 207, 132 S.W.2d 989; First Nat. Bank of Monett v. Vogt, 344 Mo. 284, 126 S.W.2d 199; Castorina v. Herrmann, 340 Mo. 1026, 104 S.W.2d 297. Contrast Chrisman v. Zeysing, Mo., 209 S.W.2d 144 [1]; Farmers & Merchants Bank of Festus v. Funk, 338 Mo. 508, 92 S.W.2d 587.

It follows that we need not rule defendant's other contentions, all based upon the assumption that Balch conveyed to defendant in satisfaction of an existing, bona fide indebtedness.

The judgment is affirmed.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by LOZIER, C., is adopted as the opinion of the court.

All concur.