SPRINGFIELD GENERAL OSTEO-
PATHIC HOSPITAL,
Plaintiff–Respondent,

v.

Wayne W. WEST and Penny Sue
West, Defendants,

and

Kathy Lee West, David L. West and
Linda West, Defendants–Appellants.

No. 16437.

Missouri Court of Appeals,
Southern District,
Division One.

April 27, 1990.

Robert W. Stillings, Springfield, for defendants-appellants.

Richard E. Dorr, David A. Fielder, Dorr, Baird and Lightner, P.C., Springfield, for plaintiff-respondent.

CROW, Presiding Judge.

Springfield General Osteopathic Hospital ("the Hospital") brought this action against five defendants: Wayne W. West and Penny Sue West (husband and wife), Kathy Lee West, and David L. West and Linda West (husband and wife, parents of Kathy Lee West).

Count I of the Hospital's two-count petition prayed, among other things, that the trial court set aside a conveyance by Wayne West and Penny West of a one-sixth interest in a parcel of real estate to Kathy West. Count II prayed the trial court to determine the interests of each party in the parcel, to order a partition sale, and to distribute the proceeds to the parties according to their respective interests.

Defendants Wayne West and Penny West defaulted. Defendants Kathy West, David West and Linda West appeared and contested the case. The trial court entered judgment granting the relief itemized in the preceding paragraph. Defendants Kathy West, David West and Linda West appeal, briefing five assignments of error which will be discussed after a synopsis of the facts.

Wayne West and David West are two of the six sons of Lena West. The other four are Leroy, Homer, Eddie and Jackie.

On January 8, 1974, Lena West purchased the parcel in question. A house is situated on it. She took title in her name and that of Wayne West, her youngest son who was then living with her.

Wayne ultimately departed, served in the Army, and later married Penny.

On August 4, 1982, Lena West was seriously ill. She, together with Wayne and Penny, executed a warranty deed conveying the property to Lena's six sons. Lena died August 23, 1982.

David West testified that after the funeral the six brothers agreed that $7,500 was a fair price for the property. That figure, said David, was based on an appraisal some years earlier by one Frank Garland. David recounted that the brothers agreed that Wayne and Penny would buy the property and that they could reside there rent-free until they acquired the money to pay for it. Wayne and Penny moved in shortly thereafter.

In September, 1983, Penny received medical services from the Hospital; the bill totaled $4,686.47.

On February 1, 1984, the Hospital's lawyer sent a letter to Wayne and Penny demanding payment of the balance due which, according to the letter, was $4,636.47. The letter stated that if there was no response within ten days suit would be filed.

On February 15, 1984, the Hospital, having received no response, filed suit against Wayne and Penny. It was assigned number CV584–214AC–3. Summons was served February 17, 1984. David West testified he, Eddie and Jackie were at the residence of Wayne and Penny when service was made. According to David, Wayne took the papers into the house without saying anything.

Later that day Wayne and Penny, David and Linda, Leroy and his wife, Homer and his wife, together with Eddie and Jackie (both unmarried), went to a lawyer's office and executed a warranty deed conveying the property to Kathy West, then 18 years of age.

David paid Homer $1,250, Eddie $1,250, and Jackie $2,500, each by cashier's check. David testified that each brother's share was computed at $1,250, based on the agreed price of $7,500. David explained that Jackie received $2,500 and Leroy nothing because Leroy had agreed to give Jackie Leroy's share if Jackie helped Leroy on the latter's farm. David added that he paid Wayne and Penny nothing because Wayne owed him (David) more than $1,250 and they agreed the debt would be forgiven.

The deed to Kathy was recorded February 21, 1984.

On March 16, 1984, judgment was entered in favor of the Hospital and against Wayne and Penny in case number CV584–214AC–3 in the amount of $5,193.24.

On May 2, 1984, an execution was issued in case number CV584–214AC–3. The sheriff levied upon all right, title and interest of Wayne and Penny in the subject property and published notice that it would be sold June 27, 1984.

On the latter date the sheriff carried out the sale. The Hospital submitted the highest bid, $100, and received a sheriff's deed conveying all right, title and interest of Wayne and Penny in the subject property.

The Hospital commenced the instant suit February 7, 1985. It was tried by the court without a jury. At time of trial (February 7, 1989), Wayne and Penny were still residing on the property.

A licensed real estate salesperson presented as a witness by the Hospital expressed the opinion that in 1984–85 the property had a fair market value of $14,000.

Kathy West (now Mast [1]), called as a witness by the Hospital, testified she paid no one any money when the property was deeded to her in 1984. She has never received any rent from Wayne and Penny and has never paid taxes on the property. Additionally, said Kathy, her parents have never prepared any gift tax declaration indicating the property was a gift to her. Kathy explained that Wayne and Penny are supposed to pay rent of $150 per month to Kathy's parents, and that when the parents have received a total of $7,500 Kathy is to begin receiving the rent. Kathy did not know how much rent Wayne and Penny had paid since the property was deeded to her but she did know they had not paid the rent in full. The rent record is maintained by Kathy's mother, Linda. Kathy avowed she was unaware the Hospital had sued Wayne and Penny over the hospital bill until she (Kathy) was sued in the instant case.

David West testified that in 1984 he was a truck driver and owned two trucks, and that the purpose of titling the property in Kathy's name was, in part, to protect it from anyone who might make a claim against him from a trucking accident. David corroborated Kathy's testimony that once he and Linda got their money back from the rent paid by Wayne and Penny, the property was Kathy's for "whatever

---

1. She married Rodney Mast January 3, 1986.

she wants to do with it." David said the house is uninsured because "[i]t's not worth insuring." David conceded Wayne was "behind" on the rent.

David disclosed there are no written records substantiating how much Wayne owed him at the time the property was deeded to Kathy, but that it was in "the neighborhood" of $2,000. David admitted he did not care whether Wayne paid the debt because "he's a brother" and had sent their mother money when he was in the Army. David was aware in 1983 that Wayne had been through bankruptcy a few years earlier. Although David was present when the papers in case number CV584–214AC–3 were served on Wayne, David insisted he did not know what that was about until he (David) was sued in the instant case.

Linda West, called as a witness by the Hospital, testified that while she did not know how much Wayne owed her and David in February, 1984, it was "more than his part in the house." Linda avowed that when the property was deeded to Kathy, Wayne told David he could keep Wayne's part "because I owe you more than that." Linda maintained she was unaware that the Hospital was threatening suit against Wayne over the hospital bill. Linda corroborated David's explanation that the property was put in Kathy's name to protect it from any claim that might result from a truck accident.

Linda confirmed that the money paid Homer, Eddie and Jackie came from her and David, and that she and he had paid the taxes on the property since 1984. Linda's record of rent payments by Wayne showed that the first one was in May, 1984. Wayne paid $1,050 in 1984, $1,800 in 1985, $1,500 in 1986, and $700 in 1987. He had made no payment during the 13 months immediately preceding trial. Linda explained, "They've been living on welfare, not had any money."

Linda testified she made the arrangements with the lawyer's secretary for preparation and execution of the deed to Kathy. The arrangements, according to Linda, were made the week before the signing took place, as it required time to contact all the grantors and arrange for their presence.

The trial court found, among other things, that Wayne and Penny had transferred title to a motor vehicle they owned to the name of their four-year-old son to prevent the vehicle from being subject to creditors' claims. David admitted at trial that he was aware Wayne had done this, but David maintained he had learned of it only after the instant suit was filed.

The trial court further found that Wayne and Penny were expecting to be sued for debts owed by them to creditors including the Hospital when they formulated arrangements to transfer all of their interest in the subject property to Kathy, that the consideration for the conveyance was wholly inadequate and substantially less than the fair market value of the one-sixth interest, and that while there was evidence of rental payments, their frequency coupled with the method for recording them and the timing of the payments was consistent with a motive to influence the trier of fact and mask the actions of the parties with a cloak of innocence.

The trial court concluded that the conveyance by Wayne and Penny of their one-sixth interest in the property to Kathy by the deed dated February 17, 1984, was fraudulent as to the rights of the Hospital as a creditor. Consequently, the trial court ruled that the conveyance of that one-sixth interest should be set aside.

The trial court determined that by reason of the sheriff's deed resulting from the execution sale, the Hospital is the owner of a one-sixth interest in the property, and that the remaining interest is held by Kathy subject to the interest of David and Linda until they receive $7,500. The trial court did not further define the interests of Kathy, David and Linda. The trial court decided it is impossible to partition the property in kind, therefore a partition sale should be ordered.

The trial court's judgment was consistent with the above findings. With respect to the partition sale the judgment allowed the Hospital a $2,000 attorney fee, payable

from the sale proceeds. The remainder of the proceeds, after payment of the sale costs, were ordered distributed one-sixth to the Hospital and five-sixths to Kathy, David and Linda jointly.

Appellants' first point maintains the trial court's finding that the deed of February 17, 1984, was a fraudulent conveyance was unsupported by substantial evidence and was against the weight of the evidence in that there was no proof that the conveyance was made with the intent to hinder, delay or defraud the creditors of Wayne and Penny.

In considering this contention we bear in mind that the Hospital's objective was to set aside the transfer of only the interests of Wayne and Penny. The Hospital never questioned the validity of the conveyance of the interests of any other grantor. The trial court's judgment left the deed undisturbed except as to the interests of Wayne and Penny, which the trial court determined to be one-sixth.

The scope of our review is established by *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976). The judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Credibility of the witnesses and the weight to be given their testimony was a matter for the trial court, which was free to believe none, part or all of their testimony. *Herbert v. Harl*, 757 S.W.2d 585, 587[1] (Mo. banc 1988).

Section 428.020, RSMo 1986, provides:

"Every conveyance ... in writing ... of any estate or interest in lands ... made ... with the intent to hinder, delay or defraud creditors of their lawful actions, damages, ... debts or demands ... shall be ... deemed and taken, as against said creditors ... to be clearly and utterly void."

■ To establish a cause of action under this statute the creditor must show a conveyance by the debtor for the purpose of putting his assets beyond the reach of the creditor. *Barnard v. Barnard*, 568 S.W.2d 567, 569[4] (Mo.App.1978). The burden of proof is on the creditor. *Publicity Building Realty Corp. v. Thomann*, 353 Mo. 493, 183 S.W.2d 69, 72[5] (1944). Fraud is never presumed when the transaction may be fairly reconciled with honesty. *Lindell Trust Co. v. Commonwealth Land Title Ins. Co.*, 611 S.W.2d 283, 286[4] (Mo.App. 1980).

■ However, fraudulent intent is difficult to establish by direct proof, consequently it must be demonstrated by the surrounding facts and circumstances. *Community Federal Savings and Loan Ass'n. v. Boyer*, 710 S.W.2d 332, 334 (Mo. App.1986). The courts have recognized certain circumstances as "badges of fraud." *Id.* They include: (1) a conveyance to a spouse or near relative; (2) inadequacy of consideration; (3) transactions different from the usual method of transacting business; (4) transfers in anticipation of suit or execution; (5) retention of possession by the debtor; (6) the transfer of all or nearly all of the debtor's property; (7) insolvency caused by the transfer; and (8) failure to produce rebutting evidence when circumstances surrounding the transfer are suspicious. *Id.* at [2]; *Conrad v. Diehl*, 344 Mo. 811, 129 S.W.2d 870, 877[11] (1939); *Morris v. Holland*, 529 S.W.2d 948, 953[8] (Mo.App.1975).

While none of the badges of fraud existing alone establishes fraud, a concurrence of several of them raises a presumption of fraud. *Community Federal*, 710 S.W.2d at 334[3]; *Cohoon v. Cohoon*, 627 S.W.2d 304, 307[7] (Mo.App.1981).

■ The Hospital asserts that inasmuch as Wayne and Penny defaulted and have not appealed, the judgment is now unassailable by them. While that premise may be sound, it does not dispose of appellants' first point. A grantor who allegedly conveys property to prevent its being subjected to payment of his debts cannot be prejudiced by a determination that the property is subject to creditors' claims, as the property has passed beyond the grantor's control, hence he has no interest in the suit and is not a necessary party. *First National Bank of Monett v. Vogt*, 344 Mo.

284, 126 S.W.2d 199, 201[3] (1939); *Schneider v. Patton*, 175 Mo. 684, 75 S.W. 155, 167–68 (1903).

Appellants, in support of their first point, argue that the testimony of David and Linda showed Wayne and Penny received adequate consideration for their interest in the subject property in that David agreed to forgive a debt owed him by Wayne in an amount exceeding the agreed value of Wayne's and Penny's one-sixth interest in the property. Additionally, say appellants, David's testimony demonstrated that the purpose of taking title in Kathy's name was to protect the property from potential future claims against David, not to shield it from creditors of Wayne and Penny. Citing *Baum v. Abel*, 379 S.W.2d 164 (Mo.App.1964), appellants assert that inasmuch as the Hospital called David and Linda to testify as witnesses in the Hospital's case in chief, the Hospital was bound by the uncontradicted testimony of those witnesses.

The Hospital directs us to *Oetting v. Green*, 350 Mo. 457, 166 S.W.2d 548, 551[11] (1942), which holds that a plaintiff is not conclusively bound by all of the most unfavorable testimony of his witnesses where there are other facts and circumstances from which a contrary inference may be drawn. *Oetting*, a suit to set aside a fraudulent conveyance, stated that the question is not so much a matter of whether the creditor is bound by what his witnesses have said but whether he has made a case, and in deciding that question the evidence must be regarded in the light most favorable to him. *Id.* 166 S.W.2d at 551[12]. Furthermore, it is only where the adversary's testimony, as offered by the opposite party, is uncontradicted or is the only evidence on the point that the latter is bound by such testimony. *Taylor v. Riddle*, 384 S.W.2d 569, 574[3] (Mo.1964).

In the instant case David conceded there are no written records verifying how much he was owed by Wayne at the time the property was deeded to Kathy. David also acknowledged that Wayne had made cash payments on the debt from time to time. David recalled three $50 payments and a $100 payment. Additionally, Wayne had done work for David in return for money David had previously given him.

As reported earlier, David testified he did not care whether Wayne paid the debt because Wayne had sent their mother money when Wayne was in the Army and Wayne is a brother. However, in Linda's testimony during questioning by the Hospital's lawyer we find this:

"Q. ... Just so I understand it then, your attitude is that if you get paid back fine, if you don't that's okay too, is that basically it, so I understand it?

A. Well, that's about the way you have to do. *Some day I think they'll pay us back when they get the money.*" (emphasis added)

That testimony is inconsistent with the proposition that David forgave Wayne's debt in exchange for the conveyance by Wayne and Penny of their interest in the subject property.

The Hospital, as we have seen, presented evidence that at the time of the conveyance in question the property had a fair market value of $14,000. Given the lack of documentation regarding Wayne's alleged debt to David, the absence of testimony by David and Linda as to the exact amount due by Wayne at the time of the challenged conveyance, Linda's testimony that she thinks Wayne and Penny will pay the debt when they get enough money, and the Hospital's evidence that the fair market value of the property was $14,000 at the time of the conveyance, we reject appellants' contention that the trial court was compelled to find that Wayne and Penny received adequate consideration for their interest in the property.

The fact that David and Linda may have taken title in Kathy's name instead of theirs in order to protect the property from potential future claims against David does not demonstrate that Wayne and Penny had no intent to place their interest in the property beyond the reach of the Hospital at the time of the conveyance.

We hold the evidence was sufficient to establish at least the first six badges of

fraud enumerated in *Community Federal,* 710 S.W.2d at 334[2].

First, Wayne and Penny conveyed their interest to a near relative, the daughter of one of Wayne's brothers.

Second, as discussed earlier, there was sufficient evidence to support the trial court's finding that Wayne and Penny received inadequate consideration for their interest.

Third, the transaction was different from the usual method of transacting business. Title was taken in Kathy's name, yet her parents have received all the rent, paid the taxes, and made the decision to leave the property uninsured. There is no document creating any security interest in the property in favor of David and Linda in the sum of $7,500 or any other amount.

Fourth, Wayne and Penny transferred their interest in expectation that the Hospital would sue them for the unpaid hospital bill. The letter informing them that suit was imminent was sent February 1, 1984. Linda testified she made arrangements for preparation of the deed the week before the signing took place. That testimony supports a finding that the arrangements were made after Wayne and Penny were notified they were about to be sued.

Fifth, Wayne and Penny retained possession of the property after the deed was executed, and were still there at time of trial.

Sixth, the evidence was sufficient to demonstrate a transfer by Wayne and Penny of all or nearly all of their property. The subject real estate was (and remains) their place of residence. They transferred title to a motor vehicle they owned to their four-year-old son. Wayne had gone through bankruptcy a few years before the deed in question. During the 13 months immediately preceding trial Wayne and Penny, according to Linda, had been living on welfare. Finally, David testified that Wayne uses David's pickup for transportation, as Wayne owns no motor vehicle capable of being driven.

Appellants' first point is without merit.

Appellants' second point avers that even if the evidence showed fraudulent intent on the part of Wayne and Penny, there was no evidence that the "grantees" had any notice of such fraudulent intent or participated therein.

There was, of course, only one grantee: Kathy. The fact that her parents exercised the incidents of ownership over the property and received the rent demonstrates the irregularity of the transaction, as pointed out earlier in our discussion of the third "badge."

Appellants cite authority for the proposition that where a transfer is for a valuable consideration, creditors cannot attack it because of fraudulent intent of the grantor if the grantee had no notice thereof and did not participate therein. While that may be correct as an abstract statement of law it does not require reversal here.

Kathy conceded she paid nothing for the interest of Wayne and Penny (or any other grantor). In *Balch v. Whitney,* 273 S.W.2d 497 (Mo.1954), the trial court found that the grantee in an allegedly fraudulent conveyance had given no consideration to the grantor. *Id.* at 500[7]. The trial court set the conveyance aside. On appeal the grantee argued there was no evidence that when she accepted the deed she knew the grantor had made it for the purpose of defrauding his creditor (ex-wife). Affirming the judgment, the Supreme Court of Missouri held that in the case of a voluntary conveyance, proof of actual fraud on the part of the grantee is not essential in determining whether the conveyance may be set aside. *Id.* at 500[6].

Furthermore, the trial court was not obliged to believe that David and Linda forgave Wayne's debt as consideration for the transfer by Wayne and Penny of their interest to Kathy.

Appellants' second point is denied.

Appellants' third point avers the conveyance by Wayne and Penny of their interest in the property was not fraudulent in that such interest was exempt from execution by reason of § 513.475, RSMo 1986, the "homestead" exemption.

To establish a homestead there must be a bona fide intention of making the premises a homestead or permanent residence. *State v. Haney*, 277 S.W.2d 632, 637[11] (Mo.1955). Here, Wayne and Penny owned only a one-sixth interest in the parcel and, while there was evidence that Wayne's brothers were willing to sell their interests to Wayne, he and Penny had occupied the property some 17 months prior to the challenged conveyance without paying the brothers anything.

There was evidence that Wayne had attempted to borrow $6,500 from a bank in January, 1983, and had attempted to borrow $6,500 from another bank in May, 1983, and that both applications had been denied. There was no evidence of any other attempt prior to the execution of the challenged deed (February 17, 1984). As Wayne and Penny did not appear at trial, there was no testimony by either of them that they intended to make the premises their permanent residence. The trial court could have believed Wayne and Penny had no such intent and that their objective was simply to remain on the property rent-free as long as Wayne's brothers would allow it. The evidence did not compel a finding that the interest of Wayne and Penny in the property was exempt from execution by reason of § 513.475.

Furthermore, there was no evidence that any defendant knew about § 513.475 and believed that it shielded the interest of Wayne and Penny in the property from their creditors. Had there been such evidence it would have supported an argument that Wayne and Penny had no fraudulent intent when they deeded their interest to Kathy. The record, however, is void of such evidence. Appellants' third point is without merit.

Appellants' fourth point alleges the Hospital's petition failed to state a claim upon which relief could be granted in that it did not allege with particularity the circumstances constituting fraud on the part of appellants, and specifically there were no allegations that appellants knew of the fraudulent intent of Wayne and Penny or that appellants participated therein.

The petition alleged, among other things, that David is Wayne's brother, that Kathy is the daughter of David and Linda, that Kathy paid no consideration for the property, that Wayne and Penny received no consideration for the transfer of their interest, that Wayne and Penny continued to reside on the property after the transfer of their interest, and that the transfer of their interest was done with intent to defraud the Hospital as their creditor.

More importantly, however, the issue of fraudulent intent on the part of appellants was tried by implied consent of the parties, hence it will be treated in all respects as if pleaded. Rule 55.33(b)[2]; *Boeckmann v. Fitzpatrick*, 491 S.W.2d 524, 527[2] (Mo. 1973). Appellants' fourth point is denied.

Appellants' final point charges the trial court with error in refusing to receive in evidence the deposition testimony of Frank Garland.

The deposition was taken September 25, 1987, some 16 months before trial. In the deposition Garland stated he resided in Stone County. Appellants asserted at trial that the deposition could be used because Garland resides in a county other than the one in which the trial was being held. Rule 57.07(a)(3)(E). As we comprehend the record, the trial court refused the deposition on the ground that the facts which would authorize its use could not be established by the testimony in the deposition.

Assuming, arguendo, that the trial court was incorrect (see Rule 57.07(b); *Smith v. Hofer, Inc.*, 701 S.W.2d 451, 456[7] (Mo.App.1985); *Sabbath v. Marcella Cab Co.*, 536 S.W.2d 939, 942[8] (Mo.App. 1976)), the ruling does not warrant reversal.

The segment of Garland's deposition offered by appellants established that he had been a real estate agent for several years before quitting in 1974. On one occasion—the date is not shown—Garland, at the request of Lena West, looked at the property in question and told her that if she

---

2. Rule references are to Missouri Rules of Civil Procedure (1990).

wanted to sell it she should list the price at $7,500.

Appellants maintain the exclusion of this evidence was prejudicial in that it would have corroborated David's testimony about how the brothers arrived at the figure of $7,500 as a fair price for the property. According to appellants, this "would have tended to disprove that a fraudulent intent existed."

We fail to see how the excluded testimony would have materially aided appellants. It is evident that Garland viewed the property several years before Lena West died, consequently what he thought the listing price should have been at the time he saw it does not necessarily indicate its value at the time the brothers allegedly agreed that $7,500 was a fair price.

Moreover, the trial court's finding that the consideration for the one-sixth interest of Wayne and Penny was inadequate could have been based on the trial court's disbelief of the testimony by David and Linda that Wayne and Penny conveyed their interest in return for the cancellation of Wayne's debt to David.

Finally, appellants concede Garland's testimony was not competent evidence of the fair market value of the property at the time of the challenged deed.

■ Trial error against an appellant does not require an appellate court to reverse the judgment unless the appellate court finds that the error materially affected the merits of the action. Rule 84.13(b); *Roque v. Kaw Transport Co.*, 697 S.W.2d 254, 256[3] (Mo.App.1985); *Rowe v. Moss*, 656 S.W.2d 318, 322[9] (Mo.App.1983). We hold that the trial court's exclusion of the Garland deposition did not materially affect the merits of the instant case.

Appellants' final point is denied.

Judgment affirmed.

PREWITT and PARRISH, JJ., concur.